**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **YUE YU, on behalf of herself and all those similarly situated,** | |
| **Plaintiff,** | **CLASS ACTION COMPLAINT** |
| -against- | |
| **ENERGY PLUS HOLDINGS LLC, and ENERGY PLUS NATURAL GAS LP,** | **JURY TRIAL DEMANDED** |
| **Defendants.** | |

Plaintiff Yue Yu brings this action in her individual capacity and on behalf of a class of persons defined below, and alleges for her complaint with knowledge as to her own acts and otherwise upon information and belief, as follows:

**OVERVIEW OF DEFENDANTS' WRONGFUL
ACTS AND BASIS OF THIS ACTION**

1.  This lawsuit arises from a fraudulent and deceptive scheme perpetrated by Defendants Energy Plus Holdings LLC and Energy Plus Natural Gas LP (together "Defendants" or "Energy Plus"). Defendants promise customers competitive market-based rates and savings on their energy bills if they switch from their local utilities or other energy suppliers to Energy Plus. However, these representations are a bait-and-switch trap. Within one or two billing cycles, Defendants routinely jack up their customers' rates well above the market – often by as much as 150% or more. A customer may even end up paying two to three times more for electricity or natural gas than what he or she did before converting to Energy Plus. Instead of benefitting from moving to Energy Plus, a typical customer loses out – to the tune of hundreds or thousands of dollars per year. Thus,

Defendants deceptively cause their customers to pay considerably more for energy supplies than they should have and otherwise would have paid.

2.     Plaintiff Yue Yu, on behalf of the class she seeks to represent, brings this lawsuit to redress Defendants' unlawful and unconscionable consumer practices in New Jersey.

3.     Defendants' practices emerge from and take advantage of the deregulation of the energy supply markets in New Jersey and other states where Energy Plus does business – including Connecticut, Illinois, Maryland, Massachusetts, New York, Ohio, Pennsylvania, and Texas. Under these states' deregulation laws, the supply portion of a consumer's electric or natural gas bill is separated from the delivery portion. In theory, with the supply portion open to competition, customers can freely shop around for the best price on their energy supplies. But, by engaging in its bait-and-switch scheme, Energy Plus subverts the consumer-friendly purpose of these laws and prevents its customers from making a free, informed choice.  In reality, most customers would be far better off staying with their local utilities or another supplier than switching to Energy Plus.

4.     Plaintiff Yue Yu brings this action on behalf of a class of New Jersey consumers under the New Jersey Consumer Fraud Act ("NJCFA"), N.J.S.A. § 56:8-1, et seq, as well as under New Jersey common law based on (i) the covenant of good faith and fair dealing and (ii) unjust enrichment.  Through its deceptive and unconscionable practices, Defendants bilk the class out of millions of dollars per year. Energy Plus currently has almost 150,000 customers in 9 states. Upon information and belief, the class consists of thousands or tens of thousands of current and former customers in New Jersey, each of whom has sustained damages of as much as hundreds or thousands of dollars annually.

5.     Plaintiff brings this class action under Fed. R. Civ. P. 23 to recover damages, statutory penalties, and other relief for herself and the class of Energy Plus customers who have suffered

damages from Defendants' imposition of unreasonable and exorbitant energy prices in violation of the company's representations. Only a class action will provide Plaintiff and the class with any possibility of relief. Plaintiff and the class are therefore entitled to a class-wide remedy.

## JURISDICTION AND VENUE

6. This Court possesses federal subject matter jurisdiction over the action pursuant to 28 U.S.C. § 1332(d) for the following reasons:

 (a) the number of members of the proposed Plaintiff class is 100 or more;

 (b) there is at least minimal diversity of citizenship between the Plaintiff class (named and unnamed) and the Defendants. Defendants are headquartered and have their primary place of business in Pennsylvania while Plaintiffs and the class members are residents of New Jersey;

 (c) the amount in controversy – which may be calculated by aggregating the claims of the class members – exceeds the sum or value of $5 million.

7. Venue is proper in this district pursuant to 28 U.S.C. § 1391.

8. The wrongful acts Plaintiff complains of – Defendants' imposition of excessive and unreasonable rates in violation of their representations – occurred and were carried out in this District and their effects were felt in this District.

## THE PARTIES

9. **Plaintiff Yue Yu** is a resident of Kearny, New Jersey. In or about September 2011, Ms. Yu enrolled as an Energy Plus customer as a result of the company's deceptive representations and began to receive her electricity and natural gas supplies from Energy Plus. Due to the conduct alleged in this case, Ms. Yu has incurred over $200 in overcharges from November 2011 to the present – ranging up to about 70% above market rates each month. When Ms. Yu finally discovered Defendants' billing practices and the fact that she was paying significantly more than she would be as a customer of her local utility company, PSEG, she switched back to PSEG.

10.     **Defendant Energy Plus Holdings LLC**, a corporation with its principal place of business in Philadelphia, Pennsylvania, is licensed as an electricity supplier in New Jersey – license number ESL-0087.

11.     **Defendant Energy Plus Natural Gas LP,** a corporation with its principal place of business in Philadelphia, Pennsylvania, is licensed as a natural gas supplier in New Jersey – license number ESL-0100.

12.     Defendants act in concert to commit the acts alleged herein.  Defendants bait customers such as Ms. Yu and the class of New Jersey consumers to obtain their electricity and natural gas supplies from Energy Plus and then fail to deliver the promised market rates.

## FACTUAL ALLEGATIONS

13.     In 1999, New Jersey deregulated energy supply in the state.  Customers may now purchase electricity and/or natural gas through "alternative" third-party suppliers while continuing to obtain delivery from their local public utilities. These private suppliers are not subject to oversight and regulation by the New Jersey Board of Public Utilities (BPU).  For example, by law, the BPU has primary jurisdiction over all disputes concerning service, billing, and payment by public utilities but not private suppliers such as Energy Plus.  In contrast to public utilities, the BPU does not have oversight of the rates charged by Energy Plus.  The intent of the deregulation law is to provide consumer choice and allow competition to drive down customer rates.

14.     Energy Plus takes advantage of the regime in deregulated states such as New Jersey by adopting deceptive and unconscionable business tactics.  Defendants mislead consumers to believe that by switching to Energy Plus they will save money over their local public utilities. Energy Plus further represents that its rates will be tied to market factors and will be competitive with the market. In fact, as many customers soon discover, Energy Plus' representations only hold for the first month

4

of service; after that, their rates skyrocket, completely divorced from prevailing market conditions. At a minimum, Energy Plus exploits ambiguities in its representations and customer agreements to draw consumers in by creating the expectation of competitive prices they will never see. Energy Plus fails to disclose that, on a consistent basis, its regular rates are substantially higher than its competitors and are exorbitant when compared to the market.

15. In or about September 2011, Ms. Yu received an Energy Plus flyer in the mail along with her Continental Airlines One Pass Mileage Program Statement. The advertisement stated that new Energy Plus customers would receive up to 12,500 One Pass miles for initially signing up with Energy Plus and additional reward miles each month when they paid their energy bills. As part of its business plan, Energy Plus regularly entices customers into its bait-and-switch scheme using such travel rewards, cash back offers, and similar incentives. Energy Plus tells its customers that the company is unique for offering these rewards in connection with its energy supply services. But, the value of these inducements is negligible compared to the amounts by which Energy Plus grossly overcharges its customers through its deceptive conduct.

16. The advertisement inescapably implied that customers such as Ms. Yu who switched to Energy Plus for electricity and/or natural gas likely would save 10% over their local utility company. Upon information and belief, Energy Plus' advertisements routinely indicate that customers can save up to 10-20% on their energy rates. Energy Plus' mailers also stated that customers would "Enjoy the same service without risk, fees, or long term commitment." These statements are misleading. They fail to indicate that Energy Plus' rates are generally substantially higher than its competitors and that new customers were virtually assured of receiving far more expensive service.

17. After receiving Energy Plus' flyer in the mail, Ms. Yu went onto the company's website where she viewed additional representations about the company's service and prices. The website

5

reemphasized that Energy Plus' rates were competitive and that customers could save up to 10%.

18.     Energy Plus' advertisements, website, and customer agreements indicate that its rates are market-based and highly competitive. Energy Plus uniformly and consistently represents that its rates are "competitive" and reflective of market conditions and that the company will provide "the best competitive rate possible." For example, the company represents in mailers that "Energy Plus offers a market-rate product, which means we buy electricity every day on the open market." Energy Plus' website states that its rates are "market-driven" -- that they are "based on market prices and other factors" and are calculated monthly using an average in the customer's region. In this market-driven process, the Energy Plus website represents, the company scours the market to find the best rates for its customers: "Our approach is to purchase energy from each of these markets on a daily and monthly basis, which allows us to incorporate the most up-to-date energy costs from each market into our rates." The clear implication is that Energy Plus is purchasing energy at market rates, where vigorous competition ensures the lowest possible prices for its customers.

19.     Furthermore, the company's salespeople represent to potential customers that, in addition to receiving incentive rewards, they should on average save on energy costs if they switch to Energy Plus.  Salespeople even tell customers to expect a particular percentage in savings.

20.     While Energy Plus indicates that its rates may at times be higher than public utilities, it misleadingly suggests that its rates will generally be competitive with the market. In order to maintain its customer base, even after consumers may realize they are being had, Energy Plus' website advises customers to take the long view: "in order to make an informed comparison to competitive offers, customers should average their bills over the course of several months or seasons, rather than taking a snapshot of just one month. Our goal is to be competitive with other energy suppliers over the long run while offering valuable rewards."

21. When confronted about the company's billing practices, Energy Plus salespeople and representatives also attempt to reassure customers that the company's prices are "competitive" and will average out over time.

22. But as most customers eventually realize, the long view is a hoax and the rewards programs touted by the company are a mere pittance. After the first month with Energy Plus, customers' rates will never reflect going market prices. Like playing in a casino using a stacked deck, a customer who sticks with Energy Plus hoping to break even will only sink deeper into the quicksand and enable the company to further line its pockets at its customers' expense. In fact, Energy Plus' rates are not competitive with other suppliers or in line with market factors. Customers who switch to Energy Plus can wind up paying as much as two to three times above the going rate in the area. The company's customers in New Jersey and nationwide regularly complain that Energy Plus' rates far exceed that of any other supplier, that their rates have doubled or more after the first month, and that they are often being overcharged by more than 100% as compared to remaining with their local utilities.

23. Moreover, Energy Plus' claims that its rates are highly market sensitive are undermined by the fact that the prices it charges its customers often remain the same from month-to-month even in periods where market costs decline.

24. Energy Plus does not disclose these material facts to its customers but actively encourages the false perception that switching to and remaining with Energy Plus will mean savings to the cost-conscious consumer.

25. Energy Plus' various representations regarding price are materially misleading to consumers and have the capacity to mislead. Given knowledge of the relevant facts regarding Energy Plus' exorbitant rates after the first month, no reasonable consumer would choose it as an energy supplier.


**Plaintiff Yue Yu's Experiences With Energy Plus**

26.     After viewing the company's advertisements, website, and other representations, Plaintiff Yue Yu submitted an online application on or about September 19, 2011 to move to Energy Plus as her electricity and natural gas supplier. The company accepted. She began electricity service in or about November 2011 and natural gas service in or about December 2011.

27.     For the first month of Energy Plus service, Ms. Yu received a discount of almost 10% as compared to her former provider PSEG. Thereafter, the company jacked up its rates and charged her from 30 to71% more than PSEG each month, as represented in the following chart:

|  | Nov-11 | Dec-11 | Jan-12 | Feb-12 | Mar-12 | Projected Apr-12 |
|---|---|---|---|---|---|---|
| *Electricity* | | | | | | |
| Total kWh | 591 | 549 | 574 | 529 | 511 | 529 |
| PSEG-Total charge | $66.82 | $61.98 | $67.98 | $64.92 | $58.55 | $64.92 |
| Energy Plus Total charge | $60.71 | $87.53 | $91.52 | $84.34 | $81.47 | $84.34 |
| PSEG per kWh | $0.113063 | $0.112896 | $0.118432 | $0.122722 | $0.114579 | $0.122722 |
| Energy Plus per kWh | $0.102724 | $0.159435 | $0.159443 | $0.159433 | $0.159432 | $0.159433 |
| Energy Plus vs. PSEG | -9.14% | 41.22% | 34.63% | 29.91% | 39.15% | 29.91% |
| Overcharge | | $27.89 | $25.69 | $21.20 | $25.02 | $21.20 |

|  | Nov-11 | Dec-11 | Jan-12 | Feb-12 | Mar-12 | Projected Apr-12 |
|---|---|---|---|---|---|---|
| *Gas* | | | | | | |
| Total Therms | | 95.432 | 159.017 | 125.205 | 71.993 | 70 |
| PSEG-Total charge | | $57.46 | $95.55 | $57.08 | $43.26 | $42.00 |
| Energy Plus Total charge | | $51.84 | $141.21 | $97.64 | $57.78 | $56.00 |
| PSEG per therm | | $0.602104 | $0.600879 | $0.455892 | $0.600892 | $0.600000 |
| Energy Plus per therm | | $0.543214 | $0.888018 | $0.779841 | $0.802578 | $0.800000 |
| Energy Plus vs. PSEG | | -9.78% | 47.79% | 71.06% | 33.56% | 33.33% |
| Overcharge | | | $50.13 | $44.53 | $15.94 | $15.37 |

|  | Nov-11 | Dec-11 | Jan-12 | Feb-12 | Mar-12 | Projected Apr-12 |
|---|---|---|---|---|---|---|
| Total overcharge by EnergyPlus | | $27.89 | $75.82 | $65.72 | $40.96 | $36.57 |

28.     As seen in the above chart, in the second month of its contract with Ms. Yu, Energy Plus raised her electricity rate by more than 55% even though PSEG's rate went down. Energy Plus' rate remained virtually constant over the next few months (and substantially higher than PSEG's) even though PSEG's rate fluctuated.  For example, from February to March 2012, PSEG's rate dropped by almost a full cent per kilowatt hour, or nearly 10%; Energy Plus' rate went down by a mere $.000001, or one-ten thousandth of a cent.

29.     As to natural gas, Energy Plus jacked up its rate by more than 63% in the second month even as PSEG's rate went down.  In February 2012, the company charged Ms. Yu 71% more than PSEG.

30.     In total, during five months of electricity billing and four months of natural gas billing (after the first month teaser), Energy Plus overcharged Ms. Yu by about $247 as compared to PSEG.

31.     Energy Plus' misstatements and omissions caused Ms. Yu injury because she believed that she would be charged less for electricity than she was actually charged by Energy Plus. Ms. Yu would not have enrolled in Energy Plus' service but for Defendant's deceptive and unconscionable marketing and business practices. Had Ms. Yu known that the rates she would be charged by Energy Plus were in fact substantially higher than the rates she was paying her previous energy supplier, PSEG, she would not have enrolled with Energy Plus. Ms. Yu has sustained economic injury caused by Defendants' omissions and misstatements.

32.     Similarly, the other members of the class have routinely paid substantially more for Energy Plus service as compared with their previous suppliers and have not received the competitive rates and savings they have been told to expect by the company.

## CLASS ACTION ALLEGATIONS

33. Plaintiff Yue Yu brings this action pursuant to Fed. R. Civ. P. 23 to recover damages and other relief on behalf of herself and a class of all Energy Plus customers in New Jersey from May 1, 2006 through the date of final judgment. The class consists of two subclasses: (1) New Jersey customers of Defendant Energy Plus Holdings LLC who used Energy Plus as their electricity supplier and (2) New Jersey customers of Defendant Energy Plus Natural Gas LP who used Energy Plus as their natural gas supplier.

34. Defendants have engaged in an ongoing unlawful practice of deceptively inducing customers to switch energy providers to Energy Plus and to retain their Energy Plus accounts by misrepresenting that they will receive competitive market-based rates and/or will likely save money on average over their local public utilities or other alternative providers.

35. This action is properly brought as a class action for the following reasons:

(a) The class consists of at least thousands of members and is so numerous that joinder of all members is impractical.

(b) There exist questions of law and fact common to the class which predominate over any questions affecting only individual members, including:

> (1) whether Defendants charged exorbitant undisclosed energy supply rates in violation of its representations to the class members;
>
> (2) whether Defendants' conduct violates the New Jersey Consumer Fraud Act,
>
> (3) whether Defendants breached the implied covenant of good faith and fair dealing,
>
> (4) whether Defendants' conduct has resulted in the unjust enrichment of Energy Plus, to the detriment of the class members, requiring restitution and/or disgorgement of unjustly retained monies,
>
> (5) whether Defendants should be enjoined from continuing their unlawful practices,

and

(6) whether Defendants are liable to the Class and the measure of damages.

(c) Plaintiff Yue Yu's claims are typical of the claims of the class. In common with all class members, Plaintiff was injured by Defendants' imposition of exorbitant undisclosed energy supply rates that were not commensurate with the market. Plaintiff has suffered the same kind of harm as other class members.

(d) Plaintiff has hired counsel able and experienced in class action litigation and will fairly and adequately protect the interests of the class.

(e) A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Individual damages to any one class member may be relatively small, making the expense of individual litigation prohibitive or impractical for class members.

## AS AND FOR A FIRST CAUSE OF ACTION

### (VIOLATION OF N.J.S.A. § 56:8-1, ET SEQ., NEW JERSEY CONSUMER FRAUD ACT)

36. Plaintiff repeats and realleges the allegations contained in the preceding paragraphs of this complaint and incorporates such paragraphs by reference.

37. Defendants Energy Plus Holdings LLC and Energy Plus Natural Gas LP have engaged in unfair, unlawful and deceptive acts in trade and commerce which have the capacity and tendency to deceive and, in fact, did deceive Plaintiff and the class, and damaged Plaintiff and class members.

38. Defendants represented that their energy supply rates would be market-based and competitive and/or that customers would on average save money over their local public utilities and other alternative providers. Defendants' actual rates were excessive and unreasonable and bore no reasonable relationship to market conditions.

11

39. Defendants committed an unlawful, deceptive, and unconscionable trade practice by inducing its customers to switch from other providers and/or to remain with Energy Plus and then proceeding to charge them exorbitant rates far out of line with Defendants' competitors.

40. Defendants wrongfully concealed, suppressed, and omitted to disclose that its average rates were far higher than their competitors and that the main goal of the so-called "competitive" "market-based" pricing system was not to save money on behalf of Plaintiff and the class members but to reap undue profits at their expense. While Defendants engendered the impression that all boats would rise together – that Energy Plus derived its business success from finding energy savings for the benefit of its consumer base – in fact, Energy Plus set itself up in an adversarial relationship with its customers, in which it would take advantage of them for as long as possible.

41. Defendants' misrepresentations and omissions had the capacity to mislead Plaintiff and the members of the class into believing (i) that Energy Plus' rates would be significantly lower than the amounts Energy Plus actually charged, and (ii) that these rates would be substantially equivalent to or better than the rates charged by Plaintiff's and the class members' local public utilities. Plaintiff and the class members were injured as a result.

42. Defendants' practices are grossly disproportionate with the industry. Upon information and belief, most alternative energy suppliers do charge competitive market-based rates which generally meet or beat a customer's local public utility. On the occasions where a private supplier's rates are higher than the public utility, it is usually only by a very small percentage – not, as here, 30 to 200%.

43. Because of Defendants' unlawful, deceptive, unfair, and unconscionable trade practice and scheme, Plaintiff and other members of the class have suffered injury and damages in an amount to be determined at trial. Pursuant to the New Jersey Consumer Fraud Act, this court has the power to enjoin the continuation of Defendants' conduct. Unless enjoined by this court, Defendants will

continue their unlawful practice of charging excessive undisclosed rates on Energy Plus customers.

## AS AND FOR A SECOND CAUSE OF ACTION

## (BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING)

44. Plaintiff repeats and realleges the allegations contained in the preceding paragraphs of this complaint and incorporates such paragraphs by reference.

45. Every contractual arrangement inherently carries with it a covenant of good faith and fair dealing. Under this covenant, we are not to suppose that one party is put at the mercy of the other but will read in any necessary conditions to ensure a mutuality of obligation under fair terms.

46. When a contract contains an indefinite price term – such, as here, Defendants' variable "market-based" pricing – the seller does not have unfettered discretion to set the price. Rather, under the covenant of good faith and fair dealing, the seller must set the price reasonably and in good faith.

47. Here, Defendants' have failed to satisfy this obligation. Instead of setting their rates in good faith in line with the market, Defendants have unilaterally imposed exorbitant undisclosed rates on its customers, including Plaintiff and the members of the class. In actuality, Defendants' rates bear no reasonable relationship to market conditions. While Defendants represent that, on average, their rates will be competitive with and/or undercut the market (as represented by the local public utilities that most Energy Plus customers switch from), in reality Energy Plus rates generally far exceed that market – by approximately 30% to as much as 200% per month.

48. Under the covenant of good faith and fair dealing, the court should read in the applicable price properly paid by the class members for Energy Plus' services as a reasonable, market-based rate – that is, the rates charged by the class members' local public utilities during the class period. All monies paid above this reasonable amount should be restored to the class as damages.

13

49. Plaintiff and the class have been damaged by Energy Plus' breach of the covenant of good faith in an amount to be determined at the trial of this action.

## AS AND FOR A THIRD CAUSE OF ACTION

### (UNJUST ENRICHMENT)

50. Plaintiff repeats and realleges the allegations contained in the preceding paragraphs of this complaint and incorporates such paragraphs by reference.

51. Because of the wrongful activities described above, including charging Plaintiffs exorbitant undisclosed rates grossly out of line with market conditions, Defendants have received money belonging to the Plaintiff and the class.

52. By collecting exorbitant and unreasonable rates from Energy Plus customers, Defendants have benefited from receipt of the excessive rates, and under principles of equity and good conscience, Defendants should not be permitted to keep this money.

53. Defendants have reaped illegal profits and unjustly enriched themselves at the expense of Plaintiff and class members.

54. As a result of Defendants' imposition of these excessive and unreasonable energy rates, Defendants must account to the Plaintiff and class members for such unjust enrichment and disgorge their unlawful profits as restitution to the class.

55. By reason of the foregoing, Plaintiff and the class have suffered money damages in an amount to be determined at the trial of this action.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff and the class pray for judgment:

A.　declaring this action to be maintainable as a class action;

B.　awarding compensatory damages to Plaintiff and the class members;

C.　awarding treble damages pursuant to law;

D.　enjoining defendants from continuing to implement their unlawful and illegal trade practices and schemes;

E.　awarding Plaintiff all costs and disbursements, including attorneys' fees, experts' fees, and other class action related expenses;

F.　awarding pre-judgment and post-judgment interest to Plaintiff and the class members on their damages; and

G.　granting such other and further relief as may be just and proper.

## Jury Demand

Plaintiff and the class demand a trial by jury of all issues.

Dated:　Fort Lee, New Jersey
　　　　May 2, 2012

　　　　　　　　　　　　　　　　　　SANFORD WITTELS & HEISLER, LLP
　　　　　　　　　　　　　By:　　　s/ Steven L. Wittels
　　　　　　　　　　　　　　　　　　Steven L. Wittels (SLW-8110)
　　　　　　　　　　　　　　　　　　Jeremy Heisler
　　　　　　　　　　　　　　　　　　Grant E. Morris (Of Counsel)
　　　　　　　　　　　　　　　　　　SANFORD WITTELS & HEISLER, LLP
　　　　　　　　　　　　　　　　　　440 West Street
　　　　　　　　　　　　　　　　　　Fort Lee, New Jersey 07024
　　　　　　　　　　　　　　　　　　(201) 585-5288

　　　　　　　　　　　　　　　　　　1350 Avenue of the Americas, 31st Fl.
　　　　　　　　　　　　　　　　　　New York, NY 10019
　　　　　　　　　　　　　　　　　　(646)723-2947
　　　　　　　　　　　　　　　　　　Fax: (646) 723-2948
　　　　　　　　　　　　　　　　　　swittels@swhlegal.com
　　　　　　　　　　　　　　　　　　jheisler@swhlegal.com
　　　　　　　　　　　　　　　　　　*Counsel for Plaintiff and the Class*