**DUANE MORRIS LLP**
A Delaware Limited Liability Partnership
By:   Dana B. Klinges
        Catherine L. Sakach
1940 Route 70 East, Suite 200
Cherry Hill, NJ  08003
(856) 424-8200
*Attorneys for Defendants*

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| YUE YU and RONALD OSCHER, on behalf of themselves and all those similarly situated,<br><br>     Plaintiff,<br><br>  v.<br><br>ENERGY PLUS HOLDINGS LLC and ENERGY PLUS NATURAL GAS LP,<br><br>     Defendants. | **Civil Action No. 2:12-cv-02627-JLL-MAH** |

### <u>MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT</u>

## TABLE OF CONTENTS

                                                                           **Page**

I. INTRODUCTION ..............................................................................................................1

II. PLAINTIFFS' ALLEGATIONS ........................................................................................1

III. LEGAL ARGUMENT........................................................................................................6

      A. Standard of Review................................................................................................. 6

      B. Plaintiffs Fail to State a Claim for a Violation of New Jersey's Consumer Fraud Act Based on a Belief that Energy Plus Rates are not "Competitive." ........................................................................................................ 7

      C. Plaintiffs Fail to State a Claim for a Violation of New Jersey's Consumer Fraud Act Based On A Belief That Long-Term Savings Were Guaranteed........... 8

      D. No Breach of Implied Covenant of Good Faith and Fair Dealing Is Stated In the FAC Because the Element of Intention Is Not Pled. .................................. 11

      E. Plaintiffs Do Not and Cannot Plead A Claim for Unjust Enrichment. ................. 13

IV. CONCLUSION................................................................................................................ 15

**TABLE OF AUTHORITIES**

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................................................13

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ......................................................................6

*Beneficial Corp. v. FTC*, 542 F.2d 611 (3d Cir. 1976) ...................................................................10

*Board of Trustees of Teamsters Local 863 Pension Fund v. Foodtown, Inc.*, 296 F.3d 164
    (3d Cir. 2002) ................................................................................................................................6

*Dovale v. Marketsource, Inc.,* Civil Action No. 05-2872, 2006 U.S. Dist. LEXIS 57679
    (D.N.J. Aug. 17, 2006) ................................................................................................................13

*Glass v. BMW of North America, LLC*, Civil Action No. 10-5259, 2011 U.S. Dist. LEXIS
    149199 (D.N.J. Dec. 29, 2011) .....................................................................................................9

*Hassler v. Sovereign Bank,* 644 F. Supp. 2d 509 (D.N.J. 2009), *aff'd,* 374 Fed. Appx. 341
    (3d Cir. 2010) ...........................................................................................................................9, 12

*Hassler v. Sovereign Bank*, 374 Fed. Appx. 341 (3d Cir. 2010) ...............................................9, 14

*Moser v. Milner Hotels, Inc.*, 6 N.J. 278, 78 A.2d 393 (1951) .......................................................13

*New Jersey Citizen Action v. Schering-Plough Corp.*, 367 N.J. Super. 8, 842 A.2d 174
    (App. Div. 2003) ...........................................................................................................................7

*In re PDI Sec. Litig.,* Civ. A. No. 02-cv-0211, 2005 U.S. Dist. LEXIS 18145, 2005 WL
    2009892 (D.N.J. Aug. 17, 2005) ..................................................................................................4

*Seidenberg v. Summit Bank*, 348 N.J. Super. 243, 791 A.2d 1068 (App. Div. 2002) ....................12

*Slack v. Suburban Propane Partners, L.P.,* Civil Action No. 10-2548, 2010 U.S. Dist.
    LEXIS 98602 (D.N.J. Sept. 21, 2010) ........................................................................7, 10, 11, 13

*Turf Lawnmower Repair, Inc. v. Bergen Record Corp.*, 139 N.J. 392, 655 A.2d 417
    (1995) .........................................................................................................................................7, 8

*VRG Corp. v. GKN Realty Corp.*, 135 N.J. 539, 641 A.2d 519 (1994) ..........................................13

*Wilson v. Amerada Hess Corp.,* 168 N.J. 236, 773 A.2d 1121 (2001) ...........................................12

*Wiseberg v. Toyota Motor Corp.*, Civ. A. No. 11-3776, 2012 U.S. Dist. LEXIS 45849
    (D.N.J. Mar. 30, 2012) ..................................................................................................................6

**Statutes**

N.J.S.A. § 48:3-50(b)(1) ...........................................................................................................12

New Jersey Consumer Fraud Act ("CFA"), N.J.S.A. § 56:8-1, *et seq*. ................................. Passim

**Other Authorities**

Fed. R. Civ. P. 9(b) ......................................................................................................................6

Fed. R. Civ. P. 12(b)(6).................................................................................................................1

I. INTRODUCTION

Plaintiffs Yeu Yu and Ronald Oscher bring this action on behalf of themselves and a putative class of New Jersey electricity and natural gas customers of Energy Plus Holdings LLC and of Energy Plus Natural Gas LP (collectively "Energy Plus") having variable-rate energy supply plans.  Plaintiffs' First Amended Complaint (hereinafter "complaint" or "FAC") purports to assert causes of action under 1) the New Jersey Consumer Fraud Act ("CFA"), N.J.S.A. § 56:8-1, *et seq.*, 2) the implied covenant of good faith and fair dealing, and 3) the doctrine of unjust enrichment.

Plaintiffs' allegations of "bait and switch" sales tactics are long on hyperbolic accusations and legal conclusions, but short on the kinds of facts from which a plausible claim for relief might be derived.  Most notably, plaintiffs fail to attach to their pleading copies of the marketing and contractual materials they challenge in this action.  Rather than attach written materials that would speak for themselves, plaintiffs prefer to recite what they subjectively believed was "implied" by Energy Plus in those materials.  This failure is unsurprising, as it turns out, because the written materials flatly belie the fundamental contention underpinning all of plaintiffs' allegations, *i.e.*, that Energy Plus promised them long-term savings over the local public utility's rates.  When viewed in light of the actual statements made and the written materials received by plaintiffs, however, the allegations of the First Amended Complaint fail to state a claim for relief and should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

II. PLAINTIFFS' ALLEGATIONS

Plaintiffs allege that Energy Plus promises customers "competitive market-based rates and savings on their energy bills if they switch from their local utilities or other energy suppliers to Energy Plus."  FAC ¶ 1.  But, say the plaintiffs, "[w]ithin one or two billing cycles,

Defendants routinely jack up their customers' rates well above the market – often by as much as 150% or more." *Id.*

Plaintiffs allegedly responded to Energy Plus marketing materials received by Ms. Yu in September 2011 and by Mr. Oscher in March 2011. FAC ¶ 16. The advertisement stated that new Energy Plus customers would receive up to 12,500 One Pass miles for initially signing up with Energy Plus and additional reward miles each month when they paid their energy bills.[1] *Id.* Plaintiffs do not allege any failure to receive the promised airline miles or any problem in connection with the energy supply itself, but confine their allegations to the rate charged for electricity and gas that they used.

The actual language of the relevant solicitation provided:

- **Save up to 10%** - Energy Plus has a current supply rate for new customers that is approximately 10% below your local utility company*

Exhibit A, Continental Offer CON-5628-047.

The asterisk leads the reader directly to the following:

> *The Energy Plus offer is currently available in Electric areas serviced by Atlantic City Electric, JCP&L, PSE&G and Rockland Electric Company (O&R) and Natural Gas areas serviced by New Jersey Natural Gas and PSE&G. Your local utility company will continue to deliver your energy. Switching to an electricity or natural gas supplier is not mandatory and you have the option to remain with your local utility company. . . . ***The initial rate that applies to your first month of service*** with Energy Plus will be FOR ELECTRIC: listed in the Rate section of the Terms of Service displayed on the application page as well as in your Welcome Confirmation (letter or email), and FOR NATURAL GAS: up to 10% lower than your utility's applicable rate, as described below. ***The Energy Plus rate is variable and therefore subject to change each billing cycle. Please see Terms of Service provided online and in your Welcome Package for complete details.*** Current and historical rates should not be taken as a guarantee of future

---

[1] Although plaintiffs seem to allege in paragraph 16 that they received the same "advertisement," Energy Plus records show that they did not. Accepting the allegations of the complaint for the limited purpose of this motion, defendants attach as Exhibit A the advertisement that plaintiffs seem to quote from in the complaint, which is an example of the mailing defendants believe to have been received by Ms. Yu.

2

>rates and ***Energy Plus makes no warranty, express or implied, regarding future savings***.

Exhibit A (emphasis added).

Plaintiffs do not allege that this advertisement failed to state that the initial rate applied to the first month only or to inform them that rates were variable. Rather, they contend that the advertisement "inescapably implied" that, if they switched to Energy Plus, they "likely would save 10% over their local utility company." FAC ¶ 17.

Plaintiffs also allegedly visited Energy Plus's website, which they assert "reemphasized that Energy Plus' rates were competitive and that customers could save up to 10%." FAC ¶ 18. Without pointing to any language in particular, as pleading rules require, plaintiffs contend that Energy Plus's marketing materials "indicate" that rates are "market-based and highly competitive," and extract from these "indications" the "clear implication that Energy Plus is purchasing energy at market rates, where vigorous competition ensures the lowest possible prices for its customers." FAC ¶ 19. Plaintiffs do not, however, ever allege that the "implication" that Energy Plus is purchasing power at market rates is false.

Plaintiffs also allege that unnamed "salespeople" tell unidentified customers they "should on average save on energy costs," and also tell unnamed customers "to expect a particular percentage in savings." FAC ¶ 20. Plaintiffs themselves do not appear to allege ever having been told either of these things.

Plaintiffs affirmatively allege that Energy Plus "indicates that its rates may at times be higher than public utilities." FAC ¶ 21. "When confronted [by an unnamed person or persons] about the company's billing practices," unidentified "Energy Plus salespeople and representatives" allegedly "reassure customers that the company's prices are 'competitive' and will average out over time." FAC ¶ 22.

3

Without pointing to any comprehensive comparisons or market studies, plaintiffs conclude that Energy Plus's rates "will never reflect going market prices" and "are not competitive with other suppliers or in line with market factors." FAC ¶ 23.

**Facts as to Ms. Yu**

Ms. Yu "submitted an online application on or about September 19, 2011 to move to Energy Plus as her electricity and natural gas supplier . . . [and] began electricity service in or about November 2011 and natural gas service in or about December 2011." FAC ¶ 27. Ms. Yu's first month of Energy Plus service reflected "a discount of almost 10% as compared to her former provider PSEG." FAC ¶ 28. After the first month, Ms. Yu contends, her energy rates ranged "from 30 to 71% more than PSEG." *Id.* In sum, Ms. Yu alleges that, with Energy Plus, she paid $121 more for electricity in five months than she would have paid had she purchased the same amount of electricity from PSEG during the same period and $125.97 more for four months of natural gas than she would have paid if she had purchased the same supply from PSEG. *Id.* at ¶ 28.

Plaintiff Yu claims that she relied upon unspecified "advertisements, website, and other representations" in choosing Energy Plus and that, based upon those materials, she "believed that she would be charged less for electricity than she was actually charged by Energy Plus." FAC ¶¶ 27, 32.

Ms. Yu does not attach the marketing materials or the contract that governed her service, but the Court may nevertheless consider written materials on a motion to dismiss and, where the writing contradicts the allegations, follow the document notwithstanding contrary allegations. *See In re PDI Sec. Litig.,* Civ. A. No. 02-cv-0211, 2005 U.S. Dist. LEXIS 18145, *66, 2005 WL 2009892, *21 (D.N.J. Aug. 17, 2005). In this case, the governing contract is comprised of a

Welcome Confirmation email and Terms of Service, attached as Exhibit B.  With respect to the rates charged for electricity and gas supply, the contract states as follows:

> **Rate:**  For Natural Gas – Variable price each month will reflect the cost of natural gas commodity, capacity, storage, balancing, transportation to the Delivery Point, agency services; plus all applicable taxes, fees, charges, costs, expenses and margins.  ***The price may be higher than your [local distribution utility]'s price.***  For Electricity – The initial rate that applies to your ***first month of service*** is listed below based on your account type and utility.
>
> | Utility | Residential rate per kWh | Business rate per kWh |
> |---|---|---|
> | Atlantic City Electric | $0.0974 | $0.0995 |
> | Jersey Central Power & Light (JCP&L) | $0.0974 | $0.0995 |
> | PSE&G | $0.1027 | $0.0995 |
> | Rockland Electric Company (O&R) | $0.119 | $0.099 |
>
> If you selected the Energy Plus Green Option please note that it is an additional $0.01 per kWh. Variable price each month will reflect the cost of electricity, including energy, capacity, settlement, ancillaries, related transmission and distribution charges and other market-related factors; plus all applicable taxes, fees, charges, costs, expense and margins.  ***The price may be higher than your LDU's price.***

*Id.* at **Rate** (emphasis added).  The contract did not go into effect until the expiration of a 14-day confirmation period, during which Ms. Yu could have rescinded her selection.  *Id.* at Right to Rescind.

**Facts as to Mr. Oscher**

Mr. Oscher received a 13% reduction in his electricity rate in the first month of service and a 5% reduction in the second month of service, as compared to PSEG.  FAC ¶ 35.  He contends, however, that later rates were higher than those charged by PSEG.  *Id.*  He further claims that, while PSEG's rates fluctuated, Energy Plus's rates changed by less than 1% between

5

June 2011 and April 2012. FAC ¶ 36. Mr. Oscher too allegedly "believed that he would be charged competitive electricity rates based on the market" and contends that "he would not have switched electricity suppliers" had he known the rates would be higher than with PSEG. FAC ¶ 37.

A copy of the contract governing Mr. Oscher's service is attached as Exhibit C. Mr. Oscher's terms of services are as explicit as Ms. Yu's. "The initial rate that applies to your first month of service is $0.110 per kWh. *At any time after the first month of service, but not more frequently than monthly, we may increase or decrease your rate*, based on numerous factors including, but not limited to, wholesale energy prices. Exhibit C at **Rate** (emphasis added).

### III. LEGAL ARGUMENT

#### A. Standard of Review.

To survive a motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Federal Rules of Civil Procedure further heighten the pleading standard in this case with respect to consumer fraud, requiring that the facts alleged to constitute fraud be stated with particularity. Fed. R. Civ. P. 9(b). Rule 9(b) is satisfied only by precise allegations of date, time, and place, or some other means of injecting precision and substance into the fraud allegations. *Board of Trustees of Teamsters Local 863 Pension Fund v. Foodtown, Inc.*, 296 F.3d 164, 173 n.10 (3d Cir. 2002). Claims under the New Jersey Consumer Fraud Act must meet the pleading standard of Rule 9(b). *Wiseberg v. Toyota Motor Corp.*, Civ. A. No. 11-3776, 2012 U.S. Dist. LEXIS 45849, *10 (D.N.J. Mar. 30, 2012).

B.    **Plaintiffs Fail to State a Claim for a Violation of New Jersey's Consumer Fraud Act Based on a Belief that Energy Plus Rates are not "Competitive."**

Plaintiffs assert that Energy Plus violated the CFA by representing that rates would be "market-based and competitive and/or that customers would on average save money over their local public utilities and other alternative providers." FAC at ¶ 44. As to the latter, these plaintiffs nowhere allege that anyone told them that they would "on average" save money, much less identify the "who, where and when" relating to this allegation.

As to the former, the terms "market-based" and "competitive" are non-actionable because they are not statements of material fact intended to mislead; rather, they are adjectives widely used to tout products and services, whether or not the product or service is the least expensive on the market. To be actionable, conduct must be "outside the norm of reasonable business practice in that it will victimize the average consumer." *Turf Lawnmower Repair, Inc. v. Bergen Record Corp.*, 139 N.J. 392, 416, 655 A.2d 417, 430 (1995). Under the CFA, "puffery" cannot constitute consumer fraud. *Id.* "Nor does charging five or five-hundred dollars more for an item than the price charged by a nearby competitor amount to consumer fraud." *Id.*

In *Slack v. Suburban Propane Partners, L.P.,* Civil Action No. 10-2548, 2010 U.S. Dist. LEXIS 98602, *16-17 (D.N.J. Sept. 21, 2010), this Court dismissed strikingly similar claims brought under the CFA. In a case involving a propane supply agreement, this Court declared assertions that the supplier misrepresented its rates by calling them "competitive" not actionable and "'merely expressions in the nature of puffery.'" *Id.* at *13, citing New Jersey Citizen Action v. Schering-Plough Corp.*, 367 N.J. Super. 8, 14, 842 A.2d 174, 177 (App. Div. 2003). Plaintiffs make the same claim here and the result should be the same as it was in *Slack*.

Moreover, even if a statement that rates are "market-based" or "competitive" could be deemed a statement of fact, there is nothing untruthful or misleading about it unless, like

7

plaintiffs, one selects one's own relevant "market." Plaintiffs' subjective belief that, if Energy Plus's rates exceeded those of PSEG, Energy Plus's rates were therefore not "market-based" is a conjecture about a "market" that has nothing to do with the statement Energy Plus is alleged to have made.

As the Energy Plus contract clearly states, rates are based upon multiple factors, including the price that Energy Plus pays for electricity and gas supply. Exhibits B and C. The only reasonable inference to be drawn from these factors is that "market-based" refers to the market in which Energy Plus and other ESCOs *purchase* power. Thus, the fact that Energy Plus's rates exceeded the local public utility's is insufficient to state a plausible claim that the "market-based" statement is misleading. *See Turf Lawnmower,* 139 N.J. at 416, 655 A.2d at 430. Plaintiffs fail to set forth any comparison of prices at which energy is traded in the relevant market and so cannot state a plausible claim that Energy Plus's rates are not "based" on the "market" in which Energy Plus shops for power. Indeed, even what plaintiffs allege about the rates at which Energy Plus *sells* energy is asserted only "[u]pon information and belief." FAC ¶ 48. This Court is not required to accept plaintiffs' beliefs, unsupported by facts.

      C.      **Plaintiffs Fail to State a Claim for a Violation of New Jersey's Consumer Fraud Act Based On A Belief That Long-Term Savings Were Guaranteed.**

As noted above, one can search to no avail for an allegation that either plaintiff was told that he or she would "on average" save money with Energy Plus. While plaintiffs allege that "the company's salespeople represent to potential customers that, in addition to receiving incentive rewards, they should on average save on energy costs if they switch to Energy Plus," (FAC ¶ 20), nowhere does either plaintiff allege that he or she ever spoke with any representative of Energy Plus or was told anything like this. To the contrary, both plaintiffs allege only that they received advertisements and then visited the website. And plaintiffs do not allege that this

8

representation exists on the website. Pleading fraud successfully requires much more than such broad, unspecific assertions.

Plaintiffs make no allegations about when these alleged representations respecting saving money were made, by whom, or even to whom they were made. *Glass v. BMW of North America, LLC*, Civil Action No. 10-5259, 2011 U.S. Dist. LEXIS 149199, *21-22 (D.N.J. Dec. 29, 2011) ("Plaintiff cannot simply reference a statement on a website without providing the date when the statement was made or at what point—if ever—Plaintiff was exposed to that statement."). The complaint is completely devoid of any factual allegation that either plaintiff saw this information.

Similarly, plaintiffs' subjective belief that long-term savings were "inescapably implied" (FAC ¶ 17) in the advertising materials cannot withstand a motion to dismiss. Where, as here, a CFA claim "is based upon an allegedly incomplete or misleading disclosure, and where the parties' agreement 'contain[s] the very information that Plaintiffs allege was misrepresented, suppressed, or concealed,' dismissal for failure to state a claim is appropriate." *Hassler v. Sovereign Bank,* 644 F. Supp. 2d 509, 515 (D.N.J. 2009), *aff'd,* 374 Fed. Appx. 341 (3d Cir. 2010). Put differently, there is no consumer fraud unless the challenged practice "can be said to be unfair in light of the written statements." *Hassler v. Sovereign Bank*, 374 Fed. Appx. 341, 344 (3d Cir. 2010)(affirming dismissal of CFA claim where account agreement set forth the challenged conduct).

The written documents in this case directly contradict the assertion that Energy Plus omitted material facts or misrepresented the rates that would be charged. The language quoted in the complaint --"Save up to 10% on your electric bill" -- was immediately followed by an asterisk directing the reader to the terms and conditions of the offer. Those terms and conditions

9

DM1\3350936.3

stated explicitly what the initial rate would be for both electric and natural gas services and made clear that the "Energy Plus rate is variable and therefore subject to change each billing cycle. Current and historical rates should not be taken as a guarantee of future rates, and Energy Plus makes no warranty, express or implied regarding future savings." Exhibit A.

Plaintiffs cannot rely on snippets from advertising, while ignoring explicit language that contradicts their position. "[T]he tendency of the advertising to deceive must be judged by viewing it as a whole, without emphasizing isolated words or phrases apart from their context." *Beneficial Corp. v. FTC*, 542 F.2d 611, 617 (3d Cir. 1976). No violation of the CFA can be premised upon Exhibit A, because, as a whole, it contained the very information about which plaintiffs claim to have been deceived, *i.e.*, that the quoted rate was for one month only and that rates would vary with each billing cycle and might rise above the local utility rate. Moreover, the advertising explicitly disclaimed any guarantees of future savings. Thus, the advertisement is well within the norm of business practices.

In *Slack*, plaintiffs similarly alleged that their energy supplier charged them more than they expected. The plaintiffs in *Slack* had entered into automatic purchase agreements with a propane supplier that provided a written initial rate, but expressly permitted the propane supplier to charge variable rates based upon market fluctuations and other factors. 2010 U.S. Dist. LEXIS 98602 at *11-12. Plaintiffs alleged that this was a "bait and switch" fraud and that the rates they were charged were not fair or reasonable. This Court found that the express terms of the agreement between the plaintiffs and the propane supplier permitted the challenged rate increase. *Id.* at *12. There, as here, the written agreement flatly contradicted the allegation that the defendant's exercise of its pricing discretion was deceptive.

10

This Court found, in *Slack*, that the plaintiffs' allegations regarding rates did not "rise to the level of 'substantial aggravating circumstances' [so as] to constitute an unlawful practice worthy of protection under the New Jersey Consumer Fraud Act." *Id.* at *13-14. Plaintiffs make essentially identical allegations here, and the same result should apply. Energy Plus did not engage in any unconscionable commercial practice because it did not promise electricity and natural gas at rates that would *always* be below those offered by local utilities and other ESCOs, or even that would be lower for more than the initial period described in the Welcome materials. *See* Exhibits A, B and C. Plaintiffs' contention that they understood the advertisement to contain such assurances is belied by the fact that the contract and advertisement explicitly disclaim any guaranteed savings and specifically advise that rates may be higher than those of the local utility. For these reasons, plaintiffs' Count I claim for breach of the CFA must be dismissed for failure to state a claim.

> **D.     No Breach of Implied Covenant of Good Faith and Fair Dealing Is Stated In the FAC Because the Element of Intention Is Not Pled.**

Plaintiffs Count II claim for breach of the duty of good faith and fair dealing contends that where a contract contains an "indefinite pricing term," a seller must set the price "reasonably and in good faith." FAC ¶ 52. Plaintiffs then propose that it would be "reasonable" for the Court to require that they and the class pay no more than "the rates charged by the class members' local public utilities during the class period." FAC ¶ 54. Having been advised, in writing, that Energy Plus's rates might exceed those of the local public utility, plaintiffs ask the Court to re-write their contracts. This is an attempt to misuse the implied covenant of good faith and fair dealing to obtain a better contract than the one plaintiffs entered into.

The covenant is meant to prevent one party from engaging in conduct that, while not itself a breach of a contract, nevertheless deprives the other party of the fruits of the contract.

11

*Seidenberg v. Summit Bank*, 348 N.J. Super. 243, 253, 791 A.2d 1068, 1074 (App. Div. 2002). A contracting party who has reserved the power to set prices, however, must be able to do so based on its own reasonable business strategy without falling afoul of the duty of good faith and fair dealing. *Wilson v. Amerada Hess Corp.,* 168 N.J. 236, 251, 773 A.2d 1121, 1130 (2001). The New Jersey Supreme Court in *Wilson* continued:

> [w]ithout bad motive or intention, discretionary decisions that happen to result in economic disadvantage to the other party are of no legal significance. Bad motive or intention is essential, for, as stated by the United States Court of Appeals for the Seventh Circuit, "[c]ontract law does not require parties to behave altruistically toward each other; it does not proceed on the philosophy that I am my brother's keeper."

*Id.* (internal citations omitted). Here, there are no plausible allegations of evil motive, or any such allegations at all. Plaintiffs merely assert that Energy Plus charges more than they would have paid had they shopped elsewhere. Conclusory allegations that a "defendant's discretionary decisions benefitted the defendant and disadvantaged the plaintiff" are insufficient to satisfy the "improper motive" element of a claim for breach of the covenant of good faith and fair dealing. *Hassler*, 644 F. Supp. 2d at 518. In light of express terms providing that variable rates might exceed local utility rates, the fact that those rates may have done so cannot be said to have deprived plaintiffs of the "fruits" of their contract.

Moreover, as plaintiffs acknowledge, "[i]n 1999, New Jersey deregulated energy supply." FAC § 14. In so doing, the Legislature found and declared that: "In a competitive marketplace, traditional utility rate regulation is not necessary to protect the public interest and that competition will promote efficiency, reduce regulatory delay, and foster productivity and innovation." N.J.S.A. § 48:3-50(b)(1). Plaintiffs' demand that this Court "*read in* the applicable price . . . that is, the rates charged by the class members' local public utilities," FAC ¶ 54 (emphasis added), is nothing less than an attempt to re-regulate an energy market that the New

12

Jersey Legislature determined to deregulate when it passed the Electric Discount and Energy Competition Act. If plaintiffs desire a re-regulated energy market, their appeal should be to Trenton, not to this Court.

Read generously, plaintiffs' allegations are no more than "threadbare recitals of the elements of a cause of action," along with a request for relief that affronts legislative prerogative. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Such allegations cannot survive a motion to dismiss. Count II, alleging breach of the implied covenant of good faith and fair dealing, must be dismissed.

E. **Plaintiffs Do Not and Cannot Plead A Claim for Unjust Enrichment.**

To state a claim for unjust enrichment, a plaintiff must establish that the "defendant received a benefit and that retention of that benefit without payment would be unjust" and that plaintiff "expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its **contractual rights**." *VRG Corp. v. GKN Realty Corp.*, 135 N.J. 539, 554, 641 A.2d 519, 526 (1994) (emphasis added). Unjust enrichment cannot exist where an express contract about the identical subject governs the parties' relationship. *Moser v. Milner Hotels, Inc.*, 6 N.J. 278, 280, 78 A.2d 393, 394 (1951)) ("It is a well settled rule that an express contract excludes an implied one.") (internal quotations omitted); *Slack*, 2010 U.S. Dist. LEXIS 98602 at *15 (D.N.J. Sept. 21, 2010). Put differently, "enrichment of one party at the expense of the other is not unjust where it is permissible under the terms of an express contract." *Dovale v. Marketsource, Inc.,* Civil Action No. 05-2872, 2006 U.S. Dist. LEXIS 57679, *23-24 (D.N.J. Aug. 17, 2006) (citation omitted).

Plaintiffs' contracts contained and explained the pricing terms under which Energy Plus received this alleged "enrichment." Because the variable rate was set forth in the parties'

13

contracts, Energy Plus was not "unjustly enriched" as a matter of law.  *See Hassler*, 374 Fed. Appx. at 345-46 (where account agreement set forth manner in which challenged transactions would be posted, plaintiff could not satisfy requirement to allege enrichment *beyond a party's contractual rights*).

Plaintiffs' unjust enrichment claim fails to state a claim, even if pled in the alternative to a breach of contract claim, because the complaint fails to allege circumstances that make the retention of payments "unjust."  Indeed, plaintiffs' allegations are no more than ill-disguised legal conclusions, *e.g.*, that Energy Plus "received money belonging to the Plaintiffs and the class," "benefited from receipt of the excessive rates," and "reaped illegal profits."  FAC ¶¶ 57-59.  Energy Plus has not retained any benefit without providing a service in exchange.  Energy Plus provided electricity and natural gas and received payment.  Plaintiffs received electricity and natural gas and paid for both.  Mere disagreement about the rate does not constitute unjust enrichment.  For these reasons, plaintiffs fail to state a claim for unjust enrichment and Count III of the FAC must be dismissed.

## IV. CONCLUSION

For all the foregoing reasons, this Court should dismiss plaintiffs' First Amended Complaint for failure to state a claim upon which relief can be granted.

                                        Respectfully submitted,

                                        s/ Catherine L. Sakach
                                        Catherine L. Sakach, Esquire
                                        Duane Morris LLP
                                        1940 Route 70 East, Suite 200
                                        Cherry Hill, NJ 08002
                                        (856) 874-4226

                                        Dana B. Klinges, Esquire
                                        Duane Morris LLP
                                        30 South 17th Street
                                        Philadelphia, PA 19103
                                        (215) 979-1143

                                        *Attorneys for Defendants*

Dated: August 9, 2012