**DUANE MORRIS LLP**
A Delaware Limited Liability Partnership
By:     Dana B. Klinges
          Charles M. Hart
          Catherine L. Sakach
1940 Route 70 East, Suite 200
Cherry Hill, NJ  08003
(856) 424-8200
*Attorneys for Defendants*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
### (Newark Vicinage)

| | |
|---|---|
| YUE YU, RONALD OSCHER, DONALD FAISTL, and STANLEY ARROW, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> ENERGY PLUS HOLDINGS LLC and ENERGY PLUS NATURAL GAS LP, <br><br> Defendants. | **Civil Action No. 2:12-cv-02627-JLL-MAH** <br><br> **(consolidated with Civil Action No. 2:12-CV-02879-JLL-MAH)** |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS
## PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................1

II.     PLAINTIFFS' ALLEGATIONS .......................................................................2

III.    ARGUMENT ...................................................................................................10

      A.      Standard of Review.................................................................................. 10

      B.      Plaintiffs Fail to State a Claim Under New Jersey's Consumer Fraud Act .......... 10

            1.      Allegations Based on a Belief that Energy Plus Rates are not "Competitive" or Market-Based Should Be Dismissed............................. 10

            2.      Plaintiffs Fail to State a Claim for a Violation of New Jersey's Consumer Fraud Act Based On Energy Rates .......................................... 15

            3.      The Alleged *per se* Violations Fail to State a Claim Under the NJCFA. . 19

      C.      Plaintiffs Fail to State a Claim Under the New Jersey Plain Language Act......... 22

      D.      The Alleged Breach of the Implied Covenant of Good Faith and Fair Dealing  Fails to State a Claim Upon Which Relief Can Be Granted. ................. 22

      E.      Plaintiffs' Count IV Breach of Contract Claim Fails as a Matter of Law ........... 25

      F.      Plaintiffs Do Not and Cannot Plead A Claim for Unjust Enrichment. ................ 26

      IV.     CONCLUSION................................................................................................ 28

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................25

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ..................................................9

*Beneficial Corp. v. FTC*, 542 F.2d 611 (3d Cir. 1976) ...............................................18

*Board of Trustees of Teamsters Local 863 Pension Fund v. Foodtown, Inc.*, 296 F.3d 164
    (3d Cir. 2002) ...........................................................................................................10

*Brunswick Hills Racquet Club, Inc. v. Rte. 18 Shopping Ctr. Assoc.*, 182 N.J. 210 (2005) ..........23

*Glass v. BMW of North America, LLC*, No. 10-5259, 2011 U.S. Dist. LEXIS 149199
    (D.N.J. Dec. 29, 2011) ............................................................................................17

*Hassler v. Sovereign Bank*, 374 Fed. Appx. 341 (3d Cir. 2010) .................................17

*Hassler v. Sovereign Bank,* 644 F. Supp. 2d 509 (D.N.J. 2009), *aff'd,* 374 Fed. Appx. 341
    (3d Cir. 2010) .....................................................................................................17, 24

*Lum v. Bank of Am.*, 361 F.3d 217 (3d Cir. 2004) .......................................................11

*Morales v. Trans World Airlines, Inc.*, 504 U.S. 374 (1992) .......................................19

*Moser v. Milner Hotels, Inc.*, 6 N.J. 278 (1951) .........................................................26

*New Jersey Citizen Action v. Schering-Plough Corp.*, 367 N.J. Super. 8, 842 A.2d 174
    (App. Div. 2003) .....................................................................................................14

*Pacifico v. Pacifico*, 920 A. 2d 73 (N.J. 2007) ...........................................................25

*Parker v. Howmedica Osteonics Corp.*, No. 07-2400, 2008 WL 141628 (D.N.J. Jan. 14,
    2008) .......................................................................................................................10

*In re PDI Sec. Litig.,* No. 02-cv-0211, 2005 WL 2009892 (D.N.J. Aug. 17, 2005) ......................5

*Rait v. Sears, Roebuck and Co.*, No. 08-2461, 2009 WL 250309 (D.N.J. Feb. 3, 2009) .............10

*Roberts v. Cowgill*, 316 N.J. Super. 33 (App. Div. 1998) ...........................................21

*Seidenberg v. Summit Bank*, 348 N.J. Super. 243, 791 A.2d 1068 (App. Div. 2002) ..................24

*Slack v. Suburban Propane Partners, L.P.,* No. 10-2548, 2010 U.S. Dist. LEXIS 98602
    (D.N.J. Sept. 21, 2010) ......................................................................................14, 18

*Turf Lawnmower Repair, Inc. v. Bergen Record Corp.*, 139 N.J. 392, 655 A.2d 417 (1995) ...................................................................................................14, 15

*Van Orman v. Am. Ins. Co.*, 680 F.2d 301 (3d Cir. 1982) ............................................26

*Weisberg v. Toyota Motor Corp.*, No. 11-3776, 2012 U.S. Dist. LEXIS 45849 (D.N.J. Mar. 30, 2012) ..................................................................................................10

*Wilson v. Amerada Hess Corp.*, 168 N.J. 236 (2001) ...........................................23, 24

**Statutes**

N.J.S.A. § 48:3-50(b)(1) ...............................................................................................24

N.J.S.A. § 56:8-1, *et seq*, New Jersey Consumer Fraud Act ("NJCFA"), ............ Passim

N.J.S.A. § 56:8-19 ........................................................................................................21

N.J.S.A. § 56:12-1, *et seq.* ......................................................................................21, 22

**Other Authorities**

16 C.F.R. § 238.0 .........................................................................................................11

Federal Rule of Civil Procedure 6(a)(3) ................................................................. 27-28

Federal Rule of Civil Procedure 8(a)(2) .......................................................................25

Federal Rule of Civil Procedure 9(b) ...........................................................9, 10, 11, 13

Federal Rule of Civil Procedure 12(b)(6) .......................................................................2

N.J.A.C. § 13:45A-9.2 ..................................................................................................19

N.J.A.C. § 13:45A-9.2(a)(2)(i)-(iv) ..............................................................................20

N.J.A.C. § 13:45A-9.2(a)(5) ....................................................................................20, 21

N.J.A.C. § 13:45A-9.2(a)(9) ..........................................................................................20

N.J.A.C. § 13:45A-9.2(a)(10) ........................................................................................20

N.J.A.C. § 13:45A-9.6 ..................................................................................................21

N.J.A.C. § 14:4-7.3 .......................................................................................................19

Restatement (Second) of Contracts § 204 .....................................................................25

Restatement (Second) of Contracts § 204, cmt. b .........................................................26

I.      **INTRODUCTION**

By stipulation and order of this Court, plaintiffs Yue Yu, Ronald Oscher, Donald Faistl, and Stanley Arrow have filed a consolidated amended class action complaint (hereinafter "CAC"), in lieu of separate amended complaints in the *Yu* action (in which a motion to dismiss the first amended complaint was pending) and the *Faistl* action (in which this Court dismissed the complaint entirely, with leave to amend).  Plaintiffs bring this action on behalf of themselves and a putative class of electricity and natural gas customers of Energy Plus Holdings LLC and of Energy Plus Natural Gas LP (collectively "Energy Plus") having variable-rate energy supply plans.  In the consolidated, amended pleadings, plaintiffs add volume to the earlier pleadings but little additional substance.  The CAC suffers from most of the same flaws that doomed the first complaint in *Faistl*, as well as some new ones.

The CAC purports to assert five counts:  1) a count under the New Jersey Consumer Fraud Act ("NJCFA"), N.J.S.A. § 56:8-1, *et seq.*, 2) a new count for violation of New Jersey's Plain Language Act, 3) a count for breach of the covenant of good faith and fair dealing, 4) a count alleging breach of contract, and 5) a final count based on the doctrine of unjust enrichment.[1]  The first two statutory counts are asserted on behalf of a putative sub-class of New Jersey consumers and the latter three counts are asserted on behalf of all Energy Plus customers.

Tellingly, even after several amendments and dismissal of the *Faistl* complaint in its entirety by this Court, plaintiffs still fail to attach to their pleading copies of the marketing and contractual materials they challenge.  Rather than attach written materials that would speak for themselves, plaintiffs prefer to recite what they subjectively believed was "implied" by Energy Plus in those materials.  This preference is unsurprising, as it turns out, because the written

---

[1]      Gone from the original *Faistl* complaint are all claims against the parent company of defendants, as well as the common law fraud count and the count for "equitable relief."

materials flatly belie the fundamental contention underpinning all of plaintiffs' allegations, *i.e.*, that Energy Plus promised long-term savings over local public utility rates.  When viewed in light of the actual statements made and the written materials received by plaintiffs,  the allegations fail to state a claim for relief and should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II.    PLAINTIFFS' ALLEGATIONS

Plaintiffs allege that Energy Plus promises customers "competitive market-based rates and savings on their energy bills if they switch from their local utilities or other energy suppliers to Energy Plus."  (CAC ¶ 1)  But, say the plaintiffs, "[w]ithin one or two billing cycles, Defendants routinely jack up their customers' rates well above the market – often by as much as 150% or more."  *Id.*

Plaintiffs allegedly responded to Energy Plus marketing materials stating that new Energy Plus customers would receive up to 17,500 One Pass miles for enrolling with Energy Plus and additional reward miles each month when they paid their energy bills.  (CAC ¶¶ 21, 52) Plaintiffs do not allege any failure to receive the promised airline miles or any problem in connection with the energy supply itself, but confine their allegations to the rate charged for electricity and gas that they used.

At least some plaintiffs also allege that Energy Plus promises consumers "up to" 10% savings on the electric supply portion of their energy bills.  (CAC ¶¶ 22, 52, 57)  The actual language of a typical solicitation, as it relates to 10% savings, provides:

- **Save up to 10%** - Energy Plus has a current supply rate for new customers that is approximately 10% below your local utility company*

Exhibit A, Continental Offer CON-5628-047.

The asterisk leads the reader directly to the following:

2

*The Energy Plus offer is currently available in Electric areas serviced by Atlantic City Electric, JCP&L, PSE&G and Rockland Electric Company (O&R) and Natural Gas areas serviced by New Jersey Natural Gas and PSE&G. Your local utility company will continue to deliver your energy. Switching to an electricity or natural gas supplier is not mandatory and you have the option to remain with your local utility company. . . . *The initial rate that applies to your first month of service* with Energy Plus will be FOR ELECTRIC: listed in the Rate section of the Terms of Service displayed on the application page as well as in your Welcome Confirmation (letter or email), and FOR NATURAL GAS: up to 10% lower than your utility's applicable rate, as described below. *The Energy Plus rate is variable and therefore subject to change each billing cycle. Please see Terms of Service provided online and in your Welcome Package for complete details.* Current and historical rates should not be taken as a guarantee of future rates and *Energy Plus makes no warranty, express or implied, regarding future savings*.

Exhibit A (emphases added).

Plaintiffs do not allege that this advertisement failed to state that the initial "up to" 10% savings rate applied to the first month only or to inform them that rates were variable thereafter. Rather, they contend that the advertisement "inescapably implied" that, if they switched to Energy Plus, they "likely would save 10% over their local utility company," apparently for an indefinite period.  (CAC ¶ 22)

Plaintiffs also allegedly visited Energy Plus's website, which they assert "reemphasized that Energy Plus' rates were competitive and that customers could save up to 10%."  (CAC ¶ 26) Without pointing to any language in particular that they contend is misleading, as pleading rules require, plaintiffs contend generally that Energy Plus's marketing materials "indicate" that rates are "market-based and highly competitive," and they extract from these "indications" the "clear implication that Energy Plus is purchasing energy at market rates, where vigorous competition ensures the lowest possible prices for its customers."  (CAC ¶ 27)  Plaintiffs do not, however, ever allege that the "implication" that Energy Plus is purchasing power at market rates is false.

3

Plaintiffs also allege that unnamed "salespeople" tell unidentified customers that rates are "competitive" and "will average out over time."  (CAC ¶ 30)  Plaintiffs themselves do not clearly allege ever having been told either of these things.

Plaintiffs affirmatively allege that Energy Plus "indicates that its rates may at times be higher than public utilities."  (CAC ¶ 29)  "When confronted [by an unnamed person or persons] about the company's billing practices," unidentified "Energy Plus salespeople and representatives" allegedly "reassure customers that the company's prices are 'competitive' and will average out over time."  (CAC ¶ 30)

Without pointing to any comprehensive comparisons or market studies, plaintiffs conclude that Energy Plus's rates "will never reflect going market prices" and "are not competitive with other suppliers or in line with market factors."  (CAC ¶ 31)

**Facts as to Ms. Yu**

Ms. Yu "submitted an online application on or about September 19, 2011 to move to Energy Plus as her electricity and natural gas supplier . . . [and] began electricity service in or about November 2011 and natural gas service in or about December 2011."  (CAC ¶ 39)  Ms. Yu's first month of Energy Plus service reflected "a discount of almost 10% as compared to her former provider PSEG."  (CAC ¶ 40)  After the first month, Ms. Yu contends, her energy rates ranged "from 30 to 71% more than PSEG."  *Id.*  In sum, Ms. Yu alleges that, with Energy Plus, she paid $121 more for electricity in five months than she would have paid had she purchased the same amount of electricity from PSEG during the same period and $125.97 more for four months of natural gas than she would have paid if she had purchased the same supply from PSEG.  *Id.*

4

Plaintiff Yu relied upon unspecified "advertisements" and a "website" in choosing Energy Plus and, based upon those materials, "believed that she would be charged less for electricity than she was actually charged by Energy Plus." CAC ¶¶ 39-40.

Ms. Yu does not attach the marketing materials or the contract that governed her service, but the Court may nevertheless consider written materials on a motion to dismiss and, where the writing contradicts the allegations, follow the document notwithstanding contrary allegations. *See In re PDI Sec. Litig.,* No. 02-cv-0211, 2005 WL 2009892, *21 (D.N.J. Aug. 17, 2005). In this case, the governing contract as to each plaintiff is comprised of a Welcome Confirmation email and Terms of Service. Ms. Yu's examples are attached as Exhibit B.

With respect to the rates charged for electricity and gas supply, her contract states as follows:

**Rate:** For Natural Gas – Variable price each month will reflect the cost of natural gas commodity, capacity, storage, balancing, transportation to the Delivery Point, agency services; plus all applicable taxes, fees, charges, costs, expenses and margins. ***The price may be higher than your [local distribution utility]'s price.*** For Electricity – The initial rate that applies to your ***first month of service*** is listed below based on your account type and utility.

| Utility | Residential rate per kWh | Business rate per kWh |
|---|---|---|
| Atlantic City Electric | $0.0974 | $0.0995 |
| Jersey Central Power & Light (JCP&L) | $0.0974 | $0.0995 |
| PSE&G | $0.1027 | $0.0995 |
| Rockland Electric Company (O&R) | $0.119 | $0.099 |

If you selected the Energy Plus Green Option please note that it is an additional $0.01 per kWh. Variable price each month will reflect the cost of electricity, including energy, capacity, settlement, ancillaries, related transmission and distribution charges and other market-related factors; plus all applicable taxes,

5

fees, charges, costs, expense and margins. ***The price may be higher than your
LDU's price.***

*Id.* at Rate (emphases added).

**Facts as to Mr. Oscher**

Mr. Oscher alleges that he received a 13% reduction in his electricity rate in the first

month of service and a 5% reduction in the second month of service, as compared to PSEG.

(CAC ¶ 47)  He contends, however, that later rates were higher than those charged by PSEG.  *Id.*

He further claims that, while PSEG's rates fluctuated, Energy Plus's rates changed by less than

1% between June 2011 and April 2012.  (CAC ¶ 48)  Mr. Oscher too allegedly "believed that he

would be charged competitive electricity rates based on the market" and contends that "he would

not have switched electricity suppliers" had he known the rates would be higher than with PSEG.

(CAC ¶ 50)

A copy of the contract governing Mr. Oscher's service is attached as Exhibit C.  Mr.

Oscher's terms of services are as explicit as Ms. Yu's.  "The initial rate that applies to your first

month of service is $0.110 per kWh. ***At any time after the first month of service, but not more
frequently than monthly, we may increase or decrease your rate***, based on numerous factors

including, but not limited to, wholesale energy prices."  Exhibit C at Rate (emphasis added).

**Facts as to Mr. Faistl**

In or around August 2011, plaintiff Faistl alleges he enrolled with Energy Plus.  (CAC

¶¶ 13, 52)  Faistl alleges that with Energy Plus he "has paid up to 36% more for energy supplies

than he would have with his public utility and never realized any savings after the first month."

*Id.*, ¶ 13.  In his original complaint, Faistl alleged that he was not a customer of his local utility

before switching to Energy Plus, but was a customer of a different energy service company

("ESCO").  *Faistl* Complaint [Civil Action No. 12-2879, Dkt # 1] at ¶ 9.  Accordingly, his

6

allegation that he paid 36% more than he would have had he used a service he was not using does not imply anything about whether Energy Plus offered Faistl a "competitive" rate.

The actual language of the solicitation to Faistl provided: "Save up to 10% on your electricity bill* and enjoy these exclusive benefits when choosing Energy Plus as your electricity provider:

> Earn 15,000 bonus miles after two months of service*
> Earn 2,500 bonus miles after two months of natural gas service*
> Earn three miles per $1 spent in supply charges*
> Never pay a cancellation fee or be locked into a long-term commitment
> Receive the same reliable delivery service from your local utility company."

Just below these statements, the "*" provided the terms of the offer, including that:

> [t]he initial rate that applies to your first month of service with Energy Plus will be FOR ELECTRIC:  listed in the Rate section of the Terms of Service displayed on the application page as well as in your Welcome Confirmation (letter or email), and FOR NATURAL GAS: up to 10% lower than your utility's applicable rate, as described below.  *The Energy Plus rate is variable and therefore subject to change each billing cycle.  Current and historical rates should not be taken as a guarantee of future rates, and Energy Plus makes no warranty, expressed or implied, regarding future savings*.

*See* Text of August 2011 email solicitation sent to Continental Customers, attached as Exhibit D (emphasis added).

Allegedly in reliance upon the representations contained in the advertisement, Mr. Faistl completed an online application to switch to "Energy Plus electric and gas service in October of 2011."  (CAC at ¶ 52)  He subsequently entered into a contract with EP Electric and EP Gas (collectively "Energy Plus") for the provision of electricity and natural gas.  *See* Contract, comprised of Terms of Service and Welcome Confirmation email, attached as Exhibit E.  With respect to the rate charged for such services, the contract stated as follows:

> **Rate:**  For Natural Gas – Variable price each month will reflect the cost of natural gas commodity, capacity, storage, balancing, transportation to the Delivery Point, agency services; plus all applicable taxes, fees, charges, costs, expenses and margins.  *The price may be lower or higher than your [local distribution utility]'s price.*  For Electricity –

The initial rate that applies to your first month of service is listed below based on your account type and utility.

| Utility | Residential rate per kWh | Business rate per kWh |
|---|---|---|
| Atlantic City Electric | $0.0974 | $0.0995 |
| Jersey Central Power & Light (JCP&L) | $0.0974 | $0.0995 |
| PSE&G | $0.1027 | $0.0995 |
| Rockland Electric Company (O&R) | $0.119 | $0.099 |

. . .Variable price each month will reflect the cost of electricity, including energy, capacity, settlement, ancillaries, related transmission and distribution charges and other market-related factors; plus all applicable taxes, fees, charges, costs, expense and margins. ***The price may be lower or higher than your LDU's price.***

*Id.* at Rate (emphasis added).

**<u>Facts as to Mr. Arrow</u>**

In or about March 2012, plaintiff Arrow alleges he switched to Energy Plus.  CAC ¶ 14. He states that service started on or about April 13, 2012 and he received his first bill in May.  CAC ¶ 58.  Arrow does not contend that he did not receive the initial month's savings, but contends he switched back to PSEG after three months.

A copy of the Energy Plus contract terms Arrow received is attached as Exhibit F.  The actual language of the solicitation sent to Mr. Arrow was, in all material respects, substantially the same as plaintiff Oscher's.[2]

Mr. Arrow admits to having "observed" a disclosure that Energy Plus's rate was "variable," but alleges "he did not understand this to obviate the company's representations that 10% savings was attainable and would generally apply."  (CAC ¶ 57)  Rather, Arrow claims to

---

[2]     Arrow's enrollment materials refer by name to a different airline miles program due solely to the merger of Continental and United Airlines.

have understood "that sometimes he might save a bit more than 10%, sometimes a little less."

*Id.*

## **Common Allegations**

Each of the Plaintiffs allegedly received "an Energy Plus advertisement" in connection with an airline mileage program that "stated that new Energy Plus customers would receive a certain number" of miles for initially signing up with Energy Plus and additional reward miles each month when they paid their energy bills. (CAC ¶ 21) Plaintiffs make no allegation that anything concerning the mileage programs was untrue or deceptive or that they failed to receive the miles promised. Plaintiffs Yu and Oscher allege that they "viewed additional representations" on the Energy Plus website that "reemphasized that Energy Plus' rates were competitive and that customers could save up to 10%." (CAC ¶ 26) What exactly these plaintiffs "viewed" is left vague.

Allegations follow ostensibly totaling plaintiff Yu's alleged "overcharges." (CAC ¶¶ 39-43) Yu then concludes that "but for Defendants' deceptive and unconscionable marketing and business practices," she would not have selected Energy Plus. (CAC ¶ 44) Similar allegations follow with respect to Messrs. Oscher, Faistl and Arrow, each of whom concludes that he would not have enrolled "but for" certain unspecified "deceptive and unconscionable marketing and business practices." Typical is this allegation: "Energy Plus's misstatements and omissions in its above-described mailers caused Mr. Arrow injury." (CAC ¶ 62) At no point does Mr. Arrow or any other plaintiff specify as required by Rule 9(b) exactly which "mailer" he received or which statements in the "mailer" deceived him into thinking that he was guaranteed perpetual savings on his electricity.

III.    **ARGUMENT**

A.    **Standard of Review**

To survive a motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Federal Rules of Civil Procedure further heighten the pleading standard in this case with respect to consumer fraud, requiring that the facts alleged to constitute fraud be stated with particularity. Fed. R. Civ. P. 9(b). Rule 9(b) is satisfied only by precise allegations of date, time, and place, or some other means of injecting precision and substance into the fraud allegations. *Board of Trustees of Teamsters Local 863 Pension Fund v. Foodtown, Inc.*, 296 F.3d 164, 173 n.10 (3d Cir. 2002). Claims under the New Jersey Consumer Fraud Act must meet the pleading standard of Rule 9(b). *Weisberg v. Toyota Motor Corp.*, No. 11-3776, 2012 U.S. Dist. LEXIS 45849, *10 (D.N.J. Mar. 30, 2012).

B.    **Plaintiffs Fail to State a Claim Under New Jersey's Consumer Fraud Act**

1.    **Allegations Based on a Belief that Energy Plus Rates are not "Competitive" or Market-Based Should Be Dismissed.**

Plaintiffs assert that Energy Plus violated the NJCFA by representing that rates would be "market-based and highly competitive." (CAC at ¶ 27)  Plaintiffs contend that Energy Plus "misrepresent[s] that [customers] will receive competitive market-based rates and/or will likely save money on average over their local public utilities or other alternative providers." (CAC ¶ 73)  As to the latter, the would-be representative plaintiffs nowhere allege that anyone told any of them that they would "on average" save money, much less do plaintiffs identify the "who, where and when" relating to this allegation.

As this court recognized in dismissing Faistl's original complaint, allegations under New Jersey's Consumer Fraud Act, like all fraud allegations, must meet the particularity requirement

10

of Rule 9(b) of the Federal Rules of Civil Procedure.  Opinion dated September 4, 2012, 12-cv-

02879-JLL-MAH [Dkt # 25] (hereinafter *Faistl* Opinion).  *See also Rait v. Sears, Roebuck and*

*Co.*, No. 08-2461, 2009 WL 250309, at * 4 (D.N.J. Feb. 3, 2009); *Parker v. Howmedica*

*Osteonics Corp.*, No. 07-2400, 2008 WL 141628, at *3 (D.N.J. Jan. 14, 2008).  The Rule's

requirements are satisfied "by pleading the date, place or time of the fraud, or through alternative

means of injecting precision and some measure of substantiation into [the] allegations of fraud."

*Lum v. Bank of Am.*, 361 F.3d 217, 224 (3d Cir. 2004) (internal quotations omitted).  The Court

found those requirements unmet in Faistl's case because the original complaint failed to allege an

"unlawful practice."  In an attempt to meet the requirement of pleading "substantial aggravating

circumstances" that would constitute an unlawful practice, plaintiffs have now ladled on

irrelevant references to blog posts and a copy of a petition of a Connecticut regulator, which

plaintiffs routinely mischaracterize in the CAC and whose relevance to these plaintiffs is

chimerical. [3]

        At bottom, the fraud claim in the CAC is the same as in the original *Faistl* complaint, *i.e.*,

that defendants engaged in a "bait and switch scheme."  (CAC ¶ 3).  According to the Federal

Trade Commission, a "bait" scheme is "an alluring but insincere offer to sell a product or service

which the advertiser in truth does not intend or want to sell."  16 C.F.R. § 238.0.  An

introductory or "teaser" price is, by definition, not a "bait and switch" scheme, nor has the FTC

ever outlawed introductory rates.

---

[3]     Attaching the Connecticut Attorney General's petition to the Connecticut Public Utilities
        Regulatory Authority does not change the pleadings standard.  The petition on which
        plaintiffs rely details what "appears" to the Attorney General and concludes that
        Connecticut regulators should consider "new regulations requiring the utilities to
        disclose" rate information in greater detail.  The petition does not lighten these plaintiffs'
        burden to plead fraud in accordance with Rule 9(b) and Supreme Court case law.

Notwithstanding this Court's ruling in *Faistl*, plaintiffs persist in alleging that the description of Energy Plus's introductory rates as "up to 10%" lower than local utility rates was a part of this "bait and switch."  As this Court concluded, the allegation "is undercut by the explicit language contained in the parties' Agreement that monthly rates would be 'variable,' based on a variety of external factors" that were listed in the disclosure.  *Faistl* Opinion at 12.

Plaintiffs attempt to drag their NJCFA claim into the realm of the plausible by making broad allegations of the same type that this Court found wanting in Faistl's original complaint – for example, that Energy Plus "mislead[s] consumers to believe that by switching to Energy Plus they will save money over their local public utilities" and "creat[es] the expectation of competitive prices [customers] will never see."  (CAC ¶ 19)  At no point does the CAC identify the speaker or even attach a copy of the advertising in which these statements are alleged to have been made.  It is insufficient to allege that "Energy Plus touts its energy supply rates and the possibility of savings as a primary incentive to switch providers" (CAC ¶ 24) without identifying who is doing the touting or where or when it appeared.  *See Faistl* Opinion at 7 and n.6 ("Plaintiff must also allege who made the purported misrepresentations and what specific misrepresentations were made.").

In a single paragraph of the CAC, plaintiffs admit that Energy Plus discloses that "rates are variable and that future savings are not guaranteed," and at the same time allege that an unidentified "customer" would believe "savings might sometimes be closer to 5% and in some months the prices might be roughly even" when compared to local utilities.  (CAC ¶ 25)  No reasonable person, having read a disclosure that "future savings are not guaranteed," could believe that future rates would always be less than or "roughly even" with his local utility's rates. Such a conclusion is rendered all the more absurd in light of plaintiffs' subsequent admission

12

that Energy Plus informs customers that its rates "may at times be higher than public utilities." (CAC ¶ 29)

Conscious of the weakness of the claim that they were deceived by the words "up to 10%" savings, plaintiffs attempt to shift the focus to statements "that 'Energy Plus offers a market-rate product, which means we buy electricity every day on the open market" and that Energy Plus offers "competitive" rates that are "calculated monthly using an average in the customer's region." (CAC ¶ 27)  The CAC notably fails, however, to state the who, what, where, and when of these alleged representations or to tie them to these plaintiffs.

Plaintiffs attempt to by-pass the true task involved in pleading fraud by reason of rates that were not competitive.  By comparing Energy Plus only to PSE&G, or in plaintiff Faistl's case to Jersey Central Power & Light (which Faistl was not using when he switched to Energy Plus), plaintiffs ignore the actual competitors of Energy Plus – that is, the other independent energy suppliers.  Moreover, by highlighting in the CAC their "total charges," plaintiffs include charges other than the "supply charge" and thereby distort the comparison further.

The allegation that a comparison only to local utility rates is a fair measure of competitiveness is not plausible given the number of energy service providers in the marketplace.  Plaintiffs characterize language saying that Energy Plus purchases power on a "daily and monthly basis" as a representation that that Energy Plus "scours the market to find the best rates" and as a "clear implication that Energy Plus is purchasing energy at market rates, where vigorous competition ensures the lowest possible prices for its customers."  (CAC ¶ 27) Yet plaintiffs do not provide any comparison to the market among other third party energy suppliers that would make their broad statements plausible and specific within the meaning of Rule 9(b).  Without some statements from spokespersons for the defendants, comprehensive

13

comparisons to other providers, or suitable market studies, plaintiffs do not make out a plausible claim that Energy Plus's rates never reflect market prices. Mere allegations "upon information and belief" that Energy Plus's competitors' rates are in the vicinity of local public utility rates will not do.[4] (CAC ¶ 80) Conjecture about the state of the "market" does not serve to make plausible a conclusory allegation of deception based on the word "competitive."

Even if there were actual dollar-for-dollar comparisons to real charges assessed by Energy Plus's competitors, as this Court has noted, terms like "competitive" and "market-rate" are non-actionable puffery. *Slack v. Suburban Propane Partners, L.P.,* No. 10-2548, 2010 U.S. Dist. LEXIS 98602, *13 (D.N.J. Sept. 21, 2010) (citing *New Jersey Citizen Action v. Schering-Plough Corp.*, 367 N.J. Super. 8, 14, 842 A.2d 174, 177 (App. Div. 2003)). Terms such as "market-based" and "competitive" are non-actionable because they are not statements of material fact, but rather, adjectives that are widely used to tout products and services, whether or not the product or service is the least expensive on the market. Under the NJCFA, "puffery" cannot constitute consumer fraud when it is within the norm of reasonable business practice. *Turf Lawnmower Repair, Inc. v. Bergen Record Corp.*, 139 N.J. 392, 416, 655 A.2d 417, 430 (1995). "Nor does charging five or five-hundred dollars more for an item than the price charged by a nearby competitor amount to consumer fraud." *Id.*

Plaintiffs allege that Energy Plus's website states that Energy Plus's "'goal is to be competitive with other energy suppliers over the long run while offering valuable rewards.'" (CAC ¶ 29) A statement of a goal or an aim is not a statement of fact and cannot, therefore, be false or deceptive without an accompanying allegation that plausibly suggests that it was *not*

---

[4]        Indeed, according to the very first sentence of the CAC, *everything* plaintiffs allege, except as to "their own acts," is alleged "upon information and belief." This Court is not required to accept plaintiffs' beliefs, unsupported by facts sufficient to make their causes of action plausible, *especially* when that cause of action alleges fraud.

Energy Plus's goal to compete.  Such an allegation is missing from the CAC.  Moreover, even if the word "competitive" could be transformed from "puffery" to fact, it could only be done based upon allegations that compared Energy Plus's rates to other third party suppliers, which are also missing from the amended complaint, as noted above.

As Energy Plus's written information provided to these plaintiffs clearly states, variable rates are based upon multiple factors, including the price that Energy Plus pays for electricity and, where applicable, for natural gas.  Exhibits B, C, E and F [Terms of Service].  The only reasonable inference to be drawn from these factors is that "market-based" refers to the market in which Energy Plus and other ESCOs *purchase* power and that the resulting rate will include a sufficient margin to allow Energy Plus to stay in business.  Thus, the fact that Energy Plus's rates exceeded the local public utility's is insufficient to state a plausible claim that the "market-based" statement is misleading.  *See Turf Lawnmower,* 139 N.J. at 416, 655 A.2d at 430. Plaintiffs should be required to set forth, at the very least, some comparison of prices at which energy is traded and account for other factors that go into Energy Plus's variable rate or any other company's variable rate, before charging fraud.  Without this, the CAC does not state a plausible claim that Energy Plus's rates are not "based" on the "market" in which Energy Plus shops for power and on the other factors of which these plaintiffs were advised.

### 2.     Plaintiffs Fail to State a Claim for a Violation of New Jersey's Consumer Fraud Act Based On Energy Rates

As noted, most of the allegations in the CAC concerning Energy Plus's rates are not tied to any particular speaker, but are attributed to the "website" or unidentified "salespeople."  (CAC ¶¶ 30, 68)  Of at least equal importance with the failure to identify the speaker is plaintiffs' failure to identify the listener.  Although the CAC is liberally sprinkled with allegations about what "Energy Plus" represents, it fails to connect the representations to these plaintiffs.  Plaintiff

15

Yu is alleged to have "enrolled as an Energy Plus customer as a result of the company's deceptive representations" and to have incurred a loss "[b]ecause of the conduct alleged in this case."  (CAC ¶ 11)  Mr. Oscher also allegedly enrolled "[b]ecause of the company's deceptive representations concerning competitive electricity rates."  (CAC ¶ 12)  The same goes for plaintiffs Faistl (CAC ¶ 13)  and Arrow (CAC ¶ 14).

Arrow points to an approximately 40% move from the expiration of the first month introductory rate to the second month variable rate.  CAC ¶ 60.  But he was told about the variable rate that would apply after the initial month.  *See* Exhibit F.  Accordingly, his assertion that this change of rates cannot be reasonably justified by market factors is not plausible, because no reasonable consumer being apprised of an introductory rate would use only the comparison of the introductory rate to the first "variable" rate month as a measure of competitiveness or conformance to the market.

A comparison of the few other months of Arrow's service shows that, contrary to the CAC's characterization of the market, there was relatively little variation in price during the time that he was a customer of Energy Plus.  *See* CAC ¶ 59.  The same is largely true with respect to the other plaintiffs.  Where there was significant movement in the market, as with Plaintiff Yu's gas rates between January and February 2012, Energy Plus's rates tracked that movement.  *See* CAC ¶ 40 (PSEG rates alleged to have dropped approximately 14.5 cents per therm and Energy Plus rates to have dropped approximately 11 cents per therm in the same month).

As noted above, one can search the CAC to no avail for an allegation that any plaintiff was told that he or she would "on average" save money with Energy Plus.  While plaintiffs allege that "salespeople and representatives also attempt to reassure customers that the company's prices are 'competitive' and will average out over time" (CAC ¶ 30), nowhere does

16

any plaintiff allege that he or she was told anything like this.  To the contrary, plaintiffs allege only that they received advertisements and then visited the website.  And plaintiffs do not allege that this representation exists on the website.  Pleading fraud successfully requires much more than such broad, unspecific assertions.  *See Glass v. BMW of North America, LLC*, No. 10-5259, 2011 U.S. Dist. LEXIS 149199, *21-22 (D.N.J. Dec. 29, 2011) ("Plaintiff cannot simply reference a statement on a website without providing the date when the statement was made or at what point—if ever—Plaintiff was exposed to that statement.").

Similarly, plaintiffs' subjective belief that long-term savings were "inescapably implied" (CAC ¶ 22) in the advertising materials cannot withstand a motion to dismiss.  Where, as here, an NJCFA claim "is based upon an allegedly incomplete or misleading disclosure, and where the parties' agreement 'contain[s] the very information that Plaintiffs allege was misrepresented, suppressed, or concealed,' dismissal for failure to state a claim is appropriate."  *Hassler v. Sovereign Bank,* 644 F. Supp. 2d 509, 515 (D.N.J. 2009), *aff'd,* 374 Fed. Appx. 341 (3d Cir. 2010).  Put differently, there is no consumer fraud unless the challenged practice "can be said to be unfair in light of the written statements."  *Hassler v. Sovereign Bank*, 374 Fed. Appx. 341, 344 (3d Cir. 2010)(affirming dismissal of CFA claim where account agreement set forth the challenged conduct).

The written documents in this case directly contradict the assertion that Energy Plus omitted material facts or misrepresented the rates that would be charged.  The language quoted in the CAC—"Save up to 10% on your electric bill"—was immediately followed by an asterisk directing the reader to the terms and conditions of the offer.  Those terms and conditions stated explicitly what the initial rate would be for both electric and natural gas services and made clear that the "Energy Plus rate is variable and therefore subject to change each billing cycle.  Current

17

and historical rates should not be taken as a guarantee of future rates, and Energy Plus makes no warranty, express or implied regarding future savings."  Exhibits A and D.

Plaintiffs cannot rely on snippets from advertising, while ignoring explicit language that contradicts their position.  "[T]he tendency of the advertising to deceive must be judged by viewing it as a whole, without emphasizing isolated words or phrases apart from their context." *Beneficial Corp. v. FTC*, 542 F.2d 611, 617 (3d Cir. 1976).  No violation of the NJCFA can be premised upon the Exhibit A advertising because, as a whole, it contains the very information about which plaintiffs claim to have been deceived, *i.e.*, that the quoted rate was for one month only and that rates would vary with each billing cycle and might rise above the local utility rate.  Moreover, the advertising explicitly disclaimed any guarantees of future savings.  Thus, the advertisement is well within the norm of business practices.

In *Slack*, plaintiffs similarly alleged that their energy supplier charged them more than they expected.  The plaintiffs in *Slack* had entered into automatic purchase agreements with a propane supplier that provided a written initial rate, but expressly permitted the propane supplier to charge variable rates based upon market fluctuations and other factors.  2010 U.S. Dist. LEXIS 98602 at *11-12.  Plaintiffs alleged that this was a "bait and switch" fraud and that the rates they were charged were not fair or reasonable.  This Court properly found that the express terms of the agreement between the plaintiffs and the propane supplier permitted the challenged rate increase.  *Id.* at *12.  There, as here, the written agreement flatly contradicted the allegation that the exercise of pricing discretion was deceptive.

Boiled down to its essence, plaintiffs' sole complaint is that they paid more than they would have with the local utility.  Energy Plus did not engage in any unconscionable commercial practice because it did not promise electricity and natural gas at rates that would *always* be below

those offered by local utilities (or even other ESCOs), or that would be lower for more than the initial period described in the disclosures and terms of service given to plaintiffs. *See* Exhibits B, C, E and F. Plaintiffs' contention that they understood the advertisement to contain such assurances is belied by the fact that the contract and advertisement explicitly disclaim any guaranteed savings and specifically advise that rates may be higher than those of the local utility.

      **3.**      **The Alleged *per se* Violations Fail to State a Claim Under the NJCFA.**

Plaintiffs fail to state a claim that defendants' advertising violated the NJCFA because it violates N.J.A.C. § 13:45A-9.2. New Jersey Administrative Code section 13:45A-9.2 contains various "General Advertising" restrictions.[5] Plaintiffs point first to section 2, which requires advertisers "to specifically designate within an advertisement which merchandise items possess special or limiting factors relating to price, quality, condition or availability." Plaintiffs contend that Energy Plus omits "a key 'limiting factor'" in that introductory rates are unavailable "after the first month." (CAC ¶ 85) The regulation gives the following examples as illustrative of violations of this subsection:

> i. The failure to specifically designate which merchandise items are below cost, if any amount less than all advertised items are below cost, when a statement of below cost sales is set forth in an advertisement;
>
> ii. The failure to specifically designate which merchandise items, if any, are damaged or in any way less than first quality condition;
>
> iii. The failure to specifically designate merchandise as floor models, discontinued models or one of a kind, when applicable;

---

[5]    Energy Plus is subject to regulation by the Board of Public Utilities, which has issued specific regulations respecting advertising standards applicable in the context of energy competition. *See* N.J.A.C. § 14:4-7.3  "It is a commonplace of statutory construction that the specific govern the general." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992). The complete absence of any allegation that Energy Plus has violated the specific agency regulations applicable to its advertising is telling.

iv. The failure to clearly designate or describe the retail outlets at which advertised merchandise will or will not be available. Such information need not be disclosed on any in-store advertisement.

N.J.A.C. § 13:45A-9.2(a)(2)(i)-(iv). As these examples clearly show, the regulation is aimed at deceptions that fail to describe adequately a feature that "merchandise items possess." It twists logic to assert as a "limiting factor" the obvious fact that an initial rate is subject to change in the future, especially when the "merchandise" is a variable rate energy product available over any indeterminate future period.

Put differently, even if this were a "limiting factor" about "price"—which it is not—the disclosure that the rate is variable after the initial month fully sets forth the relevant "limitation," so there can have been no violation.

Similarly, the allegation that Energy Plus makes "false or misleading" assertions in violation of N.J.A.C. § 13:45A-9.2(a)(9) by not "disclosing that the 10% savings claim is a teaser" (CAC ¶ 87) fails because that fact is also disclosed, as this Court found in dismissing the initial complaint in the *Faistl* matter. *See Faistl* Opinion at 9 (alleged "failure to disclose" fails to plead a claim of fraud that is "plausible on its face" because "the parties' Agreement clearly indicates that, for both natural gas and electricity, the monthly rates would be 'variable' and 'may be lower or higher than your [local distribution utility]'s price.").

For the same reason, plaintiffs' assertion (CAC ¶ 88) that Energy Plus has not "provided 'documents, records, or other written proof' substantiating" "claims of potential future savings"—in violation of N.J.A.C. § 13:45A-9.2(a)(10)—cannot co-exist with disclosures that clearly inform consumers that rates are variable and that future savings are not guaranteed.

Presumably in an attempt to sweep aside the disclosures that defeat their claims for *per se* violations of the general advertising regulations, plaintiffs contend (CAC ¶ 86) that "mild and inadequate caveats about variable pricing" cannot cure a violation of N.J.A.C. § 13:45A-

20

9.2(a)(5).  That subsection of the general regulations prohibits:  "The use of any type, size, location, lighting, illustration, graphic depiction or color resulting in the obscuring of any material fact."  This assertion fails to state a claim because it utterly fails to point to any allegedly offending "type, size, location, lighting, illustration, graphic depiction or color."  This Court and Energy Plus should not be left to guess what plaintiffs think is not sufficiently "clear and conspicuous" or what plaintiffs are referring to as "minimized type size and style and large, overly-verbose blocks of text."  It is not too much to require a plaintiff alleging that advertising violates section 9.2(a)(5) to set forth the wording about which he complains.

Plaintiffs' contention (CAC ¶ 85) that Energy Plus's introductory rate somehow amounts to a "fictitious former price" betrays a complete misunderstanding of N.J.A.C. § 13:45A-9.6, which prohibits such deceptive pricing.  Advertising violates N.J.A.C. § 13:45A-9.6 when it compares an advertised price to a price that never existed or that never was the advertiser's actual retail price.  Introductory pricing that an advertiser actually offers and actually charges cannot conceivably constitute a "fictitious" anything.

Plaintiffs' final Count I contention that Energy Plus's "advertisements and customer agreements violate the terms and spirit" of New Jersey's Plain Language Act fails for the same reason that the Count II claim under that statute fails, as detailed below in section III.C.  But even if plaintiff had not brought this as a separate count, an alleged violation of N.J.S.A. § 56:12-1, *et seq.*, does not alone make out a claim for a violation of the NJCFA, which requires that the plaintiff suffer an "ascertainable loss of moneys or property, real or personal, as a result of" the allegedly unlawful acts.  N.J.S.A. § 56:8-19.  *See Roberts v. Cowgill*, 316 N.J. Super. 33, 41 (App. Div. 1998) ("[A] causal relationship must exist between the ascertainable loss and the

unlawful practice.")  Here, none of the plaintiffs alleges that he or she was confused by the language that Energy Plus used and suffered a resulting detriment.

For these reasons, plaintiffs' Count I claim for breach of the NJCFA must be dismissed for failure to state a claim.

### C.      Plaintiffs Fail to State a Claim Under the New Jersey Plain Language Act.

Plaintiffs purport to bring a claim, only on behalf of New Jersey consumers, for violation of New Jersey's Plain Language Act, N.J.S.A. § 56:12-1, *et seq.*

Tellingly, nowhere in the Complaint do plaintiffs even "quote"—much less attach as exhibits—the language that they contend fails to meet the requirements of the Plain Language Act.  To put it plainly, defendants must be entitled to know what language is allegedly not "plain language" in order to defend themselves.  Plaintiffs' Count II claim fails to set forth the language it contends is contrary of the Plain Language Act and, therefore, Count II should be dismissed.

Plaintiffs' Count II claim merely parrots the statute's examples of confusing language. (CAC ¶ 91)  Plaintiffs next quote the statute's damages provisions and draw conclusions as to what plaintiffs were "led to believe" and that they were harmed.  CAC ¶ 92.  In other words, the sum of the allegations are conclusions of law and generalizations about "beliefs," which together do not state a claim.

### D.      The Alleged Breach of the Implied Covenant of Good Faith and Fair Dealing Fails to State a Claim Upon Which Relief Can Be Granted.

Plaintiffs' Count III claim for breach of the duty of good faith and fair dealing contends that when parties contract for a variable rate, "the seller must set the price reasonably and in good faith."  (CAC ¶ 95)  Plaintiffs then propose that it would be "reasonable" for the Court to require that they and the class pay no more than "the rates charged by the class members' local public utilities during the class period."  (CAC ¶ 100)  Having been advised, *in writing*, that

Energy Plus's rates might exceed those of the local public utility, and having admitted that they

were advised to look at their bills (CAC ¶ 29), plaintiffs nevertheless ask the Court to re-write

their contracts.  The covenant of good faith and fair dealing surely does not require a seller to

match the lowest available price in his market.  This is an attempt to misuse the implied covenant

of good faith and fair dealing to obtain a better contract than the one plaintiffs entered into.

Plaintiffs' Count III claim for breach of the covenant of good faith and fair dealing is

essentially identical to the count that this Court dismissed in *Faistl*'s original complaint, although

considerably more long-winded.  As this Court previously held, plaintiffs are not permitted to

advance a claim of this type "absent an [allegation of] improper motive."  *Faistl* Opinion at 13-

14 (citing *Brunswick Hills Racquet Club, Inc. v. Rte. 18 Shopping Ctr. Assoc.*, 182 N.J. 210, 231

(2005).  Once again, plaintiffs allege no facts to support "the theory that Defendants exercised

their discretionary price-making authority in bad faith."  All that plaintiffs allege here is that

Energy Plus's rates greatly exceeded those of other suppliers, and so were not "competitive," and

that those rates stayed the same when others' rates decreased, and so were not "market-based."

Leaving aside the fact that the CAC is devoid of any representations concerning energy

pricing in the nine states in which putative class members reside, the allegations themselves do

not constitute "'factual content'" from which this Court could draw a reasonable inference that

Energy Plus had a "'bad motive' in exercising their discretionary price-making authority or that

they otherwise acted 'arbitrarily' or 'capriciously' . . . in carrying out their contractual

obligations."  *Faistl* Opinion at 14 (citing *Wilson v. Amerada Hess Corp.,* 168 N.J. 236, 251

(2001)).  As this Court also has recognized, the covenant of good faith and fair dealing is not a

roving mandate for courts to re-write commercial contracts and, therefore, must not be given

"overly broad construction."  *Faistl* Opinion at 13.  Conclusory allegations that a "defendant's

23

discretionary decisions benefitted the defendant and disadvantaged the plaintiff" are insufficient to satisfy the "improper motive" element of a claim for breach of the covenant of good faith and fair dealing.  *Hassler*, 644 F. Supp. 2d at 518.

The covenant is meant to prevent one party from engaging in conduct that, while not itself a breach of a contract, nevertheless deprives the other party of the fruits of the contract. *Seidenberg v. Summit Bank*, 348 N.J. Super. 243, 253, 791 A.2d 1068, 1074 (App. Div. 2002). A contracting party who has reserved the power to set prices, however, must be able to do so based on its own reasonable business strategy without falling afoul of the duty of good faith and fair dealing.  *Wilson v. Amerada Hess Corp.,* 168 N.J. 236, 251, 773 A.2d 1121, 1130 (2001).  In light of express terms providing that variable rates might exceed local utility rates, the fact that those rates may have done so cannot be said to have deprived plaintiffs of the "fruits" of their contract.

Moreover, as plaintiffs acknowledge, "[i]n 1999, New Jersey deregulated energy supply." CAC § 18.  In so doing, the Legislature found and declared that:  "In a competitive marketplace, traditional utility rate regulation is not necessary to protect the public interest and that competition will promote efficiency, reduce regulatory delay, and foster productivity and innovation."  N.J.S.A. § 48:3-50(b)(1).  Plaintiffs' demand that this Court "*read in* the applicable price . . . that is, the rates charged by the class members' local public utilities"  (CAC ¶ 100) (emphasis added), is nothing less than an attempt to re-regulate an energy market that the New Jersey Legislature determined to deregulate when it passed the Electric Discount and Energy Competition Act.  If plaintiffs desire a re-regulated energy market, their appeal should be to Trenton, not to this Court.

Read generously, plaintiffs' allegations are no more than "threadbare recitals of the elements of a cause of action," along with a request for relief that affronts legislative prerogative. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Such allegations cannot survive a motion to dismiss.  Count III, alleging breach of the implied covenant of good faith and fair dealing, must be dismissed.

### E.      Plaintiffs' Count IV Breach of Contract Claim Fails as a Matter of Law

The Court dismissed plaintiff Faistl's original count for breach of contract because Faistl failed to meet the pleading requirements of Rule 8(a)(2) inasmuch as he did not provide notice of what he contended was his contract or how he believed it had been breached.  *Faistl* Opinion at 15.  This time around, plaintiffs do no better.

Apart from failing to attach what plaintiffs refer to as "the relevant agreements," so that Energy Plus and this Court are again left to guess what provisions are alleged to have been breached, the only definite allegation concerning these unidentified "agreements" is that they do not contain price terms.  CAC ¶ 103.  This allegation is refuted by the plain wording of the materials that each plaintiff received detailing the first month's rate and that a "variable" rate would thereafter apply.  Exhibits B, C, E, and F.  Thus, plaintiffs' Count IV breach of contract claim, which asks the Court to supply a missing price term, rests on nothing.  Here, there is no missing term to be supplied.

New Jersey has adopted Restatement (Second) of Contracts section 204 respecting when missing contract terms may be later supplied by a tribunal.  *See Pacifico v. Pacifico*, 920 A. 2d 73, 78 (N.J. 2007).  Restatement section 204 provides "[w]hen the parties to a bargain sufficiently defined to be a contract have not agreed with respect to a term which is essential to a determination of their rights and duties, a term which is reasonable in the circumstances is supplied by the court."  *Id.*  "As that section and its commentary reveal, it is intended to be

applied in cases in which the parties failed to agree regarding an issue, generally because they

did not anticipate that it would arise or merely overlooked it." *Pacifico*, 920 A.2d at 78.  The

section's comment b is particularly informative:  "How omission occurs[:]  The parties to an

agreement may entirely fail to foresee the situation which later arises and gives rise to a dispute;

they then have no expectations with respect to that situation"  Restatement (Second) of Contracts

§ 204 cmt. b.  This is simply not such a case.  Here, the parties clearly anticipated and the

contract provided both the initial rate, and that a variable monthly rate would later apply.  There

is no gap to be filled, so implied contract terms are unnecessary and the law does not permit

them.

As with the covenant of good faith and fair dealing count, plaintiffs again ask that the

Court re-write the contract.  This is not the function of implied contract terms.  The best guide to

what the parties to this contract intended is the language of the contract.  Plaintiffs' attempt to

use implied in law contract theory fails as a matter of law to state a claim for breach of contract.

**F.      Plaintiffs Do Not and Cannot Plead A Claim for Unjust Enrichment.**

To state a claim for unjust enrichment doctrine the plaintiff must confer a benefit on

defendant that in good conscience the defendant should not retain.  As this Court noted in

dismissing this claim in the earlier complaint, plaintiffs apparently received the gas and electric

services they paid for—at least they do not contend otherwise. *Faistl* Opinion at 16-17.  The

terms of their service were governed by a contract that plaintiffs admit they entered into, even if

they are unclear about its contours.  As this Court noted, "under New Jersey law, 'recovery under

unjust enrichment may not be had when a valid, unrescinded contract governs the rights of the

parties.'" *Id*. at 16 (citing *Van Orman v. Am. Ins. Co.*, 680 F.2d 301, 310 (3d Cir. 1982)).  Where

a contract exists, unjust enrichment will not lie. *Moser v. Milner Hotels, Inc.*, 6 N.J. 278, 280

DM1\3571758.4

(1951)) ("It is a well settled rule that an express contract excludes an implied one.")(internal quotations omitted).  Plaintiffs have not stated a plausible claim for unjust enrichment.

Plaintiffs' unjust enrichment claim fails to state a claim, even if pled in the alternative to a breach of contract claim, because the CAC fails to allege circumstances that make the retention of payments "unjust."  Indeed, plaintiffs' allegations are no more than ill-disguised legal conclusions, *e.g.*, that Energy Plus "received money belonging to the Plaintiffs and the class," "benefited from receipt of the excessive rates," and "reaped illegal profits."  (CAC ¶¶ 107-109) Energy Plus has not retained any benefit without providing a service in exchange.  Energy Plus provided electricity and natural gas and received payment.  Plaintiffs received electricity and natural gas and paid for both and they do not contend otherwise.  Mere disagreement about the rate does not constitute unjust enrichment.  For these reasons, plaintiffs fail to state a claim for unjust enrichment and Count V of the CAC must be dismissed.

27

IV.     **CONCLUSION**

For all the foregoing reasons, the Court should dismiss plaintiffs' Consolidated Amended

Complaint for failure to state a claim upon which relief can be granted.

Respectfully submitted,


s/ Charles M. Hart
Charles M. Hart
Catherine L. Sakach
Duane Morris LLP
1940 Route 70 East, Suite 200
Cherry Hill, NJ 08002
(856) 874-4226


Dana B. Klinges
Duane Morris LLP
30 South 17th Street
Philadelphia, PA 19103
(215) 979-1143
*Attorneys for Defendants*

Dated:  November 7, 2012[6]

---

[6]     Pursuant to the Court's Standing Order 12-2, dated November 1, 2012, respecting the
inaccessibility of all Clerk's Offices for purposes of Federal Rule of Civil Procedure 6(a)
(3) through and including November 5, 2012, and with the agreement of plaintiffs'
counsel, this motion is filed as of November 7, 2012 rather than November 5, 2012, as
originally stipulated.  No change in the return date will be thereby effected.

DM1\3571758.4